FIRST NATIONAL BANK OF MARSHALLTOWN, Appellant, v.
MARSHALLTOWN STATE BANK.

**Forged Checks:** PAYMENT BY DRAWEE: *Recovery Back*. A drawee bank which pays a forged check to a holder for value and without notice, and who is without negligence in making due inquiry, cannot recover back from him.

NEGLIGENCE OF FIRST PAYER. Negligence of a bank which first cashes a forged check and puts it in circulation, cannot be imputed to a subsequent good-faith holder of the check so as to make him liable to the drawee from whom he has obtained payment of the check.

FORGED INDORSEMENT. A drawee bank which pays a forged check to the owner who is also a subsequent endorser, cannot recover back from him, as having by his indorsement guaranteed a prior indorsement which was forged; since the forgery of the indorsement was not the cause of the loss.

*Appeal from Marshall District Court.*—HON. O. CASWELL, Judge.

WEDNESDAY, JANUARY 25, 1899.

ONE F. M. Smith, having in his possession a check drawn on plaintiff bank, payable to the order of Smith & Hauser, and purporting to be signed by one J. R. Bradbury, indorsed the payee's name thereon, and presented it to the Citizens' Bank of Union, and obtained of this bank the cash therefor. This last named bank indorsed the check as follows: "Pay F. A. Balch, cashier, or order. Citizens' Bank, Union, Iowa. C. E. Lawrence, Cashier,"—and forwarded it to the Marshalltown State Bank, of which Balch was cashier, and received credit for the amount thereof on the books of the last named bank. The transaction was concluded by the Marshalltown State Bank indorsing the check, and presenting it to plaintiff bank, which cashed it. Bradbury, the purported drawer of the check, was a depositor in the last named bank. A few days after the check was paid, plaintiff discovered that the signature of the drawer was forged, and thereafter this action was begun, to recover the amount paid. A jury was waived by the parties, and the case tried to the court. From a judgment in defendant's favor, plaintiff appeals.—*Affirmed.*

*Binford & Snelling* for appellant.

*C. E. Albrook* and *E. F. Binford* for appellee.

WATERMAN, J.—A few facts in addition to those stated above are shown by the record, and something is claimed for them by the parties. We shall set them out, although, in our view of the case, they do not affect the conclusion at which we arrive. One Hauser was engaged in business near Union, and Smith, whose misdeed gives rise to this contention, was stopping with him. Shortly prior to the transaction complained of, Hauser sold some live stock to Bradbury, and Smith, who collected the money therefor, took from Bradbury a check, payable to the order of Smith & Hauser. This check Smith endorsed in the name of Smith & Hauser, and cashed at the bank of Union. There was in fact no such firm as

Smith & Hauser. The testimony shows that the check we are now speaking of was made by Bradbury, payable to the firm, at Smith's request, and that Hauser knew nothing of this fact, or of Smith's endorsement of the paper.

II. Some of the text writers on negotiable paper lay down the rule that, when a bank upon which a check is drawn pays it upon the forged signature of the drawer, the money can be recovered as paid under a mistake of fact. Story on Promissory Notes, sections 379, 529; 2 Parsons, Notes & Bills, 80. Others, while recognizing a different rule, incline to the opinion that the one just stated is the most equitable. 2 Daniel Negotiable Instruments, chapter 48, section 13. But, whatever the text writers may think, a long line of authorities sustain the proposition that, as between the drawee and a good-faith holder of a check, the drawee bank is to be deemed the place of final settlement, where all prior mistakes and forgeries shall be corrected and settled once for all; and if overlooked, and payment is made, it must be deemed final. There can be no recovery over. *Price v. Neal,* 3 Burrows, 1355; *Redington v. Woods,* 45 Cal. 406; *Bank v. Ricker,* 71 Ill. 439; *First Nat. Bank of Chicago v. Northwestern Nat. Bank,* 152 Ill. 296 (38 N. E. Rep. 739); *Deposit Bank of Georgetown v. Fayette Nat. Bank,* 90 Ky. 10 (13 S. W. Rep. 339); *Commercial & Farmers' Nat. Bank of Baltimore v. First Nat. Bank of Baltimore,* 30 Md. 11; *Star Fire Ins. Co. v. New Hampshire Nat. Bank,* 60 N. H. 442; *Bank v. Peyton* (Tex. Civ. App.), 39 S. W. Rep. 223; *St. Albans Bank v. Farmers' & Mechanics' Bank,* 10 Vt. 141; *National Park Bank of New York v. Ninth Nat. Bank,* 46 N. Y. 77; *Bank v. Bontell,* 60 Minn. 189 (62 N. W. Rep. 327). See, further, 5 Am. & Eng. Enc. Law, 1071. This doctrine is founded by some courts upon the thought that the drawee bank is conclusively presumed to know the signatures of its depositors. This, however, may be too narrow a basis. It may well be that such a rule is demanded by the necessities of business in these times,

when the currency of the commercial world is composed so largely of checks and drafts. Whether it is the better rule or the one most consonant with reason and justice is no longer an open question. The discussion seems to have been foreclosed by the overwhelming weight of authority. The rule, however, has one qualification, introduced by some cases, and which we feel inclined to adopt. When the holder of the check has been negligent in not making due inquiry, if the circumstances were such as to demand an inquiry when he took the check, the drawee may recover. Tiedeman Commercial Paper, section 399; *First Nat. Bank of Orleans v. State Bank of Alma,* 22 Neb. 769 (36 N. W. Rep. 289); *First Nat. Bank of Danvers v. First Nat. Bank of Salem,* 151 Mass. 280 (24 N. E. Rep. 44). The appellant seeks to bring its case within this exception. But the only negligence charged here is against the Bank of Union, which first cashed the check, and put it in circulation. Clearly, the negligence, if any, of that bank, cannot be imputed to the defendant. If the plaintiff had desired to take advantage of this qualification of the rule, its action, under the facts here shown, should have been against the bank which first gave currency to the paper. That was the course taken in the Nebraska case cited above.

III. Plaintiff claims, further, some rights from the fact, as it asserts, that the indorsement of Smith & Hauser was forged. The signing of a fictitious name may be a forgery. *People v. Warner,* 104 Mich. 337 (62 N. W. Rep. 405). We concede the general proposition contended for by appellant that an indorsement of negotiable paper is a guaranty of the genuineness of all prior indorsements, though we must add that this rule has no applicability under the facts of this case. If, by reason of this forged indorsement, plaintiff had been led to pay this check to one not the owner of it, no doubt it could recover from any prior endorser upon whose guarantee it had a right to rely. *Levy v.*

*Bank,* 27 Neb. 557 (43 N. W. Rep. 354). But how has plaintiff been injured by this so-called "forgery" of an indorsement? The party to whom it paid the money was entitled to it, if the payment was to be made at all. If the indorsement had been genuine, it could not have recovered from Smith & Hauser on the ground that they were indorsers; for, as we have seen, as between all good faith parties to the check, its payment by the drawee is final. If Smith, who actually made this indorsement, did so in bad faith, and with knowledge of the forgery, he is still liable to the bank, not on his indorsement, but because of his fraud. The drawee ordinarily has no recourse upon indorsers. If an indorsement is forged, yet, if the money is paid to the party entitled to it, the drawee has no reason to complain, and no right of action over. That is the case here. Plaintiff is liable to no one else for the amount of the check. It is no worse situation than it would have been had the signature of Smith & Hauser been genuine. —AFFIRMED.