# CHARLESTON.

BANK OF WILLIAMSON *v.* McDOWELL COUNTY BANK.

Submitted February 17, 1909.   Decided December 21, 1909.

1. BILLS AND NOTES—*Forged Check—Payment by Drawee—Bona Fide Holder Without Fault.*
   If the drawee of a forged check or bill of exchange pay it to a *bona fide* holder, who is without fault, he cannot recover the money from the person to whom payment was made. (p. 548).

2. SAME—*Forged Paper—Validity—Determination by Drawee.*
   In the absence of negligence or misconduct on the part of the holder of forged paper, contributing to the fraud by which the

person on whom it purports to be a check or acceptance is induced to part with money on the faith of it, such person must determine at his peril whether the signature is genuine. (p. 549).

3.   BANKS AND BANKING—*Forged Check—Payment—Negligence.*

The immunity so accorded the holder being an exception from the general rule of law, allowing recovery of money paid under a mutual mistake of fact, does not extend to one who has omitted some precautionary act or duty, usual and customary among bankers.   (p. 550).

4.   SAME—*Forged Check—Indorsement—Liability to Drawee.*

In taking a forged check from an unknown person, for collection, without inquiry as to his identity, and forwarding it for collection, after having taken the endorsement thereon of the reputed payee and placed its own unrestricted endorsement on the same, a bank omits a precautionary duty which the law merchant devolves upon it for the protection of the drawee, and makes a warranty of the genuineness of the signature of the payee, which it cannot afterwards deny; wherefore, it is liable to the drawee for the money paid on the check by the latter in ignorance of the forgery, unless the latter, by omitting some duty, resting upon it, is likewise in fault.   (p. 551).

5.   SAME—*Forged Check—Payment by Drawee—Recovery of Money.*

If, in such case, both parties have been guilty of negligence, the drawee, in failing to have in its possession any means of testing the genuineness of the signature of the drawer, and the paying bank, in failing to have the payee identified, when he is unknown, the former cannot recover of the latter.   (p. 553).

Error to Circuit Court, Mingo County.

Action by the Bank of Williamson against the McDowell County Bank.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Stokes & Bronson,* for plaintiff in error.

*Anderson, Strother & Hughes,* for defendant in error.

POFFENBARGER, JUDGE:

The Bank of Williamson, doing business at Williamson, Mingo county, sued the McDowell County Bank, located at Welch, in McDowell county, in *assumpsit,* laying the damages at $900.00.   The purpose of the action was the recovery of money paid by the plaintiff to the defendant on a forged

check for $800.00, purporting to have been drawn on the plaintiff by D. B. Young, one of its depositors, in favor of George Horner, and collected at the request of some unknown person, by the defendant. Trial by jury having been waived 'and the case submitted to the court, there was a judgment for the defendant of. which the plaintiff complains.

At the time of the forgery of the check, Young had $1,000.00 on deposit in the Bank of Williamson on which he had never drawn any checks. He resided in Kentucky, several miles from Williamson. His testimony imports that he had never had any other account or transaction with the bank as a depositor. In September, 1907, the forged check was presented to the McDowell County Bank by a stranger who wrote the name George Horner on the back of it and delivered it to one of the defendant's agents. For some reason, the bank did not give him the cash or place the amount to his credit. It took the note for collection, and, after stamping the following endorsement upon it: "Pay to the order of any Bank, Banker or Trust Co. All Prior Endorsements Guaranteed. Sep. 17, 1907. McDowell County Bank Welch, W. Va. I. J. Rhodes, 'Cashier," sent it to its correspondent at Williamson, W. Va., The Mingo County Bank, which endorsed it as follows: "Pay to the order of any Bank or Banker All Prior endorsements guaranteed Mingo County Bank. Williamson, W. Va." On the 18th day of September, 1907, the Bank of Williamson paid the amount thereof to the Mingo County Bank which, in turn, paid it to the McDowell County Bank, where it was deposited to the credit of the person calling himself George Horner, who afterwards withdrew it from the bank. Sometime in November, 1907, the forgery was discovered, upon the appearance of Young at the Bank of Williamson for the purpose of withdrawing his money, and his disavowal of any knowledge of the check that had been paid out of it.. The money was replaced to his credit and a demand made upon the defendant ifor reimbursement. The person who delivered the check for collection, and who afterwards received from it the money, was wholly unknown to the officers and agents of the McDowell County Bank and they required from him no identification. It seems that no inquiry was made as to who he was. On the face of the check there was a recital to the effect that

it had been given for land. Failure to make inquiry or require identification, together with the endorsements and guarantee stamped on the back of the check, are the circumstances relied upon by the plaintiff as fixing the liability upon the defendant.

It is hardly necessary to observe that there has been a payment of money under a mistake of fact. Ordinarily, money so paid may be recovered back. This is a general rule of law not peculiar to transactions between bankers. *Simmons* v. *Looney,* 41 W. Va. 738; *Haigh* v. *United States B & L. Ass'n.,* 19 W. Va. 792; *W. Va. Transp. Co.* v. *Sweelzer,* 25 W. Va. 434; *Burton* v. *Burton,* 10 Leigh 597; *Richmond* v. *Judah,* 5 Leigh 305. Like all other general rules, however, it has its exceptions. Circumstances are sometimes such as to impose upon one of the parties a higher duty and the exercise of greater care and diligence to know the facts than upon the other, to the end that wrong, injustice and hardship may be avoided. It is eminently fair and just, in the absence of fault or neglect on the part of the holder of a check to require the bank on which it is drawn to determine at its peril whether the signature of the maker is genuine, for it always has, or is supposed to have, knowledge on that subject and means of determining the question with reasonable certainty and safety, while the holder, who may be a purchaser for value, may be, and often is an entire stranger to the maker, having no knowledge or information as to the genuineness of the signature and no convenient means of obtaining it. The unequal footing on which the parties stand amply justifies the exception of such transactions from the operation of the general rule allowing recovery of money paid under mistake, and denial of such right to a bank for money paid on a forged check or other instrument. And so it has been uniformly held. *Johnston* v. *Commercial Bank,* 27 W. Va. 343; *Price* v. *Neal,* 3 Burr. 1354; *Smith* v. *Mercer,* 6 Taunt. 76; *Mather* v. *Maidstone,* 37 Eng. Law & Eq. 339; *Levy* v. *Bank of U. S.,* 4 Dallas 234; *U. S. Bank* v. *Bank of Georgia* 10 Wheat. 33; *Gloucester Bank* v. *Salem Bank,* 17 Mass. 33; *Bank of St. Albans* v. *F. & M. Bank,* 10 Vt. 141; *C. & F. Bank* v. *First Nat'l Bank* 30 Md. 11; *National Park Bank* v. *National Bank,* 46 N. Y. 77;

5 Am. & Eng. Ency. Law 1071; 5 Cyc. 546; Dan. Neg. Instr., section 1657; Morse on Banks & Banking, section 466.

Aside from the justice and fairness of this exception, referable to the superior position of the drawee, it faciliates commercial transactions by giving stability to commercial paper. It relieves the purchaser of checks, drafts and notes of risk and hazard to the extent of requiring care and scrutiny on the part of him who is in the better position to know whether the signature is genuine or not. It favors the outside commercial world as against the drawee, by excepting them from the operation of the general rule. The law thus accords to them a protection and right which citizens generally do not have, immunity from the return of money paid to them under a mutual mistake. The allowance of this advantage or favor does not imply the grant of anything additional. It does not relieve the purchaser of commercial paper of any duty or obligation resting upon him in the acquisition or purchase thereof. In other words, it does not bestow upon him the additional right to omit the care, prudence and diligence by which he ought to be governed in his conduct as a means of safety to himself and other parties to the paper. Accordingly, it is generally held that any negligence, omission of duty, misconduct, or act, the tendency and effect of which is to prejudice the drawee, will deprive him of the benefit of this exception, and compel him to resume his place under the operation of the general rule, applicable to the recovery of money paid under mistake of fact, and return the money.

The reason for this becomes more apparent by observing that the purchaser of commercial paper, by the act of purchase, establishes a relation between himself and all the other parties thereto; and assumes, to a limited extent, the performance of duties which otherwise would devolve upon the drawee himself. But for the intervention of the purchaser the payee of a check would himself bring it to the bank on which it is drawn and personally receive the money. There, the drawee would have an opportunity of taking precaution to ascertain whether he is the payee or a mere impostor, as well as the genuineness of the signature of the maker. Upon failure of the person applying for payment to prove his identity to the satisfaction of the bank, payment would be refused and the matter would end

there, whether the check was genuine or forged; and if it were a forged check, the bank, by that inquiry, would prevent the fraud. If the transaction passed beyond this stage, resulting in the payment of a forged check, notwithstanding the precaution of inquiry, the bank would have in its own hands knowledge of all the facts and circumstances, elicted by the inquiry, to aid it in pursuing the forger, both criminally and civilly. Is it not reasonable to say and hold that any bank, other than the one on which a check is drawn, assuming to take it by purchase or for collection and put it in circulation as commercial paper, should perform those precautionary acts for the protection of the bank on which the check is drawn, which the drawee bank itself would have performed, had the check been presented to it; and that its omission of such duty amounts to negligence and misconduct working prejudice and injury to the drawee? If a bank, in purchasing such paper, omit all inquiry as to the identity of the payee and hand over the money to some person wholly unknown to it, it is not in a position, on discovery of the fraud, to give the injured drawee any information or render it any aid in seeking the apprehension of the criminal or recovery of the money from him. The drawee has the right to assume that these duties have been performed. The general practice of bankers to make reasonable inquiry as to the identity of the payee in purchasing commercial paper is matter of common knowledge and judicial cognizance. Therefore, the endorsement of a purchasing bank, not qualified or limited in any respect, amounts to a representation to the drawee that this precaution has been taken. Upon that endorsement the drawee has the right to rely to that extent, and if identification has not been required, the endorsement amounts to an imposition by the purchasing bank upon the drawee. Thus we have two prejudicial acts, one of omission and the other of commission. The purchasing bank having assumed to perform a duty which the drawee would have performed but for its intervention, neglected to perform it. Not having performed it, it has falsely represented by its endorsement that it did.

Freedom from fault on the part of the purchaser is one of the requisites or conditions of the rule exempting him from liability under the general law. This was made plain in the original case of *Price* v. *Neal*. In declaring it, Lord Mansfield

said the defendant had *"bona fide* paid" one of the bills "without the least privity or suspicion of any forgery." Proceeding, he said: "The other bill, he (the plaintiff) actually accepts; after which acceptance the defendant innocently and *bona fide* discounts it. The plaintiff lies by for a considerable time after he has paid these bills, and then found out they were forged, and the forger comes to be hanged. He made no objection to them at the time of paying them. *Whatever neglect there was was on his side.* * * * * If there was no neglect in the plaintiff there is no reason to throw off the loss from one innocent man upon another innocent man; but in this case if there was any fault or negligence in any one it certainly was in the plaintiff and not in the defendant." Later decisions in stating the rule, put in the element of innocence in both parties. *Bank* v. *Bank,* 30 Md. 11; *Bank* v. *Bank,* 10 Vt. 141; *Ellis & Morton* v. *Life Ins. & Trust Co.,* 4 O. St. 628. In this last case, the exception is stated in the following terms: "A well settled exception to this rule occurs, when the payment is made by the drawee of a forged bill or check, to a holder for value and without fault, and the money cannot be returned without prejudice to him." The same case declares the inapplicability of this exception and the withdrawal of its protection when the condition of innocence on the part of the purchaser is lacking, in these terms: "But this exception does not apply, when, either by express agreement, or a settled course of business between the parties, or by a general custom in the place, and applicable to the business in which both parties are engaged, the holder takes upon himself the duty of exercising some material precaution to prevent the fraud; and by his negligent failure to perform it, has contributed to induce the payee to act upon the paper as genuine, and to advance the money upon it. Nor does it apply in any case, where the parties are in a mutual fault, or where the money is paid upon a mistake of facts, in respect to which both were bound to inquire." That failure of the bank on taking a forged check from a stranger without inquiry as to his identity is sufficient to deprive it of the benefit of the exception, is expressly declared in *Canadian Bank* v. *Bingham,* 30 Wash. 484, in the following terms: "A bank which pays a forged check upon it in the name of a depositor may, if it acts within a reasonable time, recover the amount thereof from the bank which took the check

in course of business, and negligently paid the money upon the indorsement of the check by the payee named, without inquiry into its genuineness, or without requiring any identification of the person presenting such check for payment; or any showing that he was lawfully the holder thereof." In substantially the same terms, it was held in *National Bank* v. *Bangs,* 106 Mass. 441, that if a party take a check, either payable to his order from a stranger or other third person, without inquiry, although in good faith and for value, and give it currency and credit by indorsing it before receiving payment, the drawee may recover back the money. For other cases declaring and enforcing this principle, see *Bank of Danvers* v. *Bank of Salem,* 151 Mass. 280; *First Nat'l Bank* v. *Northwestern Nat'l Bank,* 152 Ill. 296 (43 Am. St. Rep. 247); *Bank of Marshalltown* v. *State Bank,* 107 Ia. 327 (44 L. R. A. 131); *Bank of Quincy* v. *Ricker,* 74 Ill. 439; *Bank* v. *Allen,* 59 Mo. 310; *Bank of Crawfordsville* v. *Bank of Lafayette,* 4 Ind. App. 355; *Corn Ex. Bank* v. *Nassau Bank,* 91 N. Y. 74; *White* v. *Bank,* 64 N. Y. 316; *Turnbull* v. *Bowyer,* 40 N. Y. 456; *Peoples Bank* v. *Franklin,* 88 Tenn. 299. The general principle is stated in *Germania Bank* v. *Boutell,* 60 Minn. 189, 51 Am. St. Rep. 519, by Mr. Justice Mitchell as follows: "The bank may recover back money paid on a check to which the signature of one of its customers was forged, when there was a lack of good faith on the part of the payee toward the bank, as when he knew the check was forged, or knew the circumstances casting suspicion on its genuineness not known to the bank, and which he did not communicate to it, or where the holder was negligent in not making due inquiry as to the validity of the check before he took it, and the drawee, having a right to presume that he had made such inquiry, was itself thereby excused from making inquiry before paying it. In the first case, the holder is really a party to the fraud, and is not a good faith holder. In the second case, he has, by his negligence, contributed to the consummation of the mistake on the part of the drawee by misleading him." See also 5 Cyc. 546; 5 Am. & Eng. Ency. Law 1071; Morse on Banks & Banking, section 466; Dan. Neg. Instr., section 1657.

In conformity with these principles, it is uniformly held

that a bank endorsing a check, not drawn upon it, warrants the genuineness of all the preceding signatures endorsed on it, including that of the payee, but not that of the drawer. *First Nat'l Bank* v. *Northwestern Nat'l Bank,* 152 Ill. 296 (43 Am. St. Rep. 247); *Williams* v. *Tishomingo Savings Inst.,* 57 Miss. 633; Story on Bills of Exchange, section 225; 2 Parsons on Bills & Notes 588.

Such is the great weight of authority on the question presented. Only four cases holding the contrary have been found, namely: *Farmers Nat'l Bank* v. *First Nat'l Bank,* 30 Md. 11, *Bank of St. Albans* v. *F. & M. Bank,* 10 Vt. 141, *Salt Springs Bank* v. *Syracuse Savings Bank,* 62 Barb. 101, and *Howard* v. *M. V. Bank,* 28 La. Ann. 727 (26 Am. Rep. 105), of which the first was decided in 1838, the second in 1868, the third in 1862 and the fourth in 1876. In so far as they allow the benefit of the exception under circumstances showing negligence or misconduct on the part of a bank purchasing, or taking for collection, and putting into circulation, as if it had been purchased, a check drawn upon another bank, they are wholly irreconcilable with the great weight of judicial opinion and decision, as well as variant from the spirit of the exception declared in *Price* v. *Neal* and the great number of subsequent decisions in which it has been observed. In the last two, circumstances were disclosed which tended to prove negligence on the part of the drawers, off-setting that on the part of the purchasing banks. When both have been negligent, not merely unfortunate, no recovery can be had. The result is the same as when both are innocent. *Ellis & Morton* v. *Life Ins. & Trust Co.,* 4 O. St. 628.

I do not think I have misapprehended the principles on which the cases herein referred to have been disposed of. I adhere to the rule declared in *Price* v. *Neal* and admit the correctness of the long line of decisions enforcing it under circumstances calling for its application. There are some cases in which the rule itself is criticised and it is said to have been denounced as unsound and unreasonable by some of the text writers, but I give it unqualified approval, believing it to be indispensable in commercial transactions. But amount of time would be wasted in demand guaranties of holders, so palpably necessary

ought to be, and are in fact, everywhere made without demand. Lack of this rule would not only impede commercial transactions, but also introduce unnecessary and grave elements of uncertainty and danger, and render the whole commercial system unstable and treacherous as well as too slow to meet ordinary business demands.

The commercial evils fenced out by this exceptional rule in favor of the world at large against the drawee, would be admitted, as breeders of loss, confusion, distrust and instability, if, disregarding the premises laid down by Lord Mansfield, the courts apply it against an innocent drawee in favor of a negligent or *mala fides* holder. In two of the four cases, herein named as being contrary to the weight of authority, this seems to have been done. The cases in which negligence on the part of the purchaser has imposed liability in favor of the drawee are numerous. The attempt to argue them away by saying the decision turned on the forgery of the endorsements is futile. It is in respect to the payee and his endorsement that duty devolves upon the purchaser. He is not in a position to know anything about the genuineness of the signature of the drawer, and hence the law imposes no duty upon him in respect to that. In law, there is neither a payee nor an endorser in the case of a forged check or bill. The entire instrument is a nullity; but, for the purpose of working out justice in favor of innocent parties injured by it, it is treated, on the principle of estoppel, as a valid paper, to the extent of denying the drawee right of recovery against them, if he paid it before discovery of the forgery, and they have omitted no duty in the premises. What purports to be an endorsement by a payee, in such a case, is not an endorsement. It is a mere fraudulent act, part and parcel of the fraudulent process by which money is obtained on the forged paper. If the forger, or utterer of the forged paper, is thwarted at the initial point of negotiation by the requirement of identification, the entire scheme may be defeated and the money saved. This uniform requirement, on the part of bankers, is a strong deterrent barrier to the utterance of forged paper. Without it nobody would stand guard at the inception ... to inquire as to one of the indispensable requisites, the existence of a payee, an inquiry the ... without requiring the payee to come to his

counter for identification, and this might necessitate a trip from San Francisco to New York. ¡The impossibility of doing business in that manner necessitated the establishment, long ago, of the rule that a bank or other person, in purchasing a bill, check or note and endorsing it, warants the genuineness of all preceding signatures endorsed thereon, including that of the payee. Observe that the warranty is that of genuineness of signature, not solvency of parties. To say a bank can take and endorse a check, forged as to both drawer and payee, and having no payee and no endorsement by a payee, and not be liable on its guaranty of the genuineness of the endorsement, the drawee being without fault, is to deny applicability of the rule to a case falling within its very letter as well as its spirit. In *Vagliano Bros.* v. *Bank of England,* 23 Q. B. D. 243, 248, 251, Lord Esher said: "I think there must be three real parties, although the same party may be the drawer and the payee. But in the present case there is no real drawer. The man who pretended or purported to be the drawer was a forger. The law merchant never recognized a forger of another man's name as a real merchantile drawer. There is in this case no real payee the forging drawer cannot be recognized as the payee. The pretended payee is Petridi & Co.; but the pretended bill was not drawn in favor of Petridi & Co.; it was not intended that the pretended bill should ever be in the possession or under the control of Petridi & Co. The payee of a bill of exchange is a person in whose favor it is drawn, that is to say, the person to whom it is to be handed first in order that he may deal with it. In order to make a document a bill of exchange, there must be a real payee; Petridi & Co. were not the real payee. If they had found the pretended bill, they could not honestly have required payment of it, or have indorsed it; they would have known that it was not really drawn in their favour. The document in question had no real payee, and therefore on that ground also was not a bill of exchange. It was not even a contract of any kind, or evidence of any contract. It was not a contract or evidence of a contract between the forging drawer and the acceptor. The forger could not have sued upon it or by means of it. It was not a contract or evidence of a contract between Vucina & Co. and the acceptor. It is not at law an available instru-

ment at all, unless it can be treated as a bill of exchange. But
such a document can, between certain persons, under certain
circumstances, be treated as a bill of exchange by ordinary
rules of law, although it is not really a bill of exchange, it
can be so treated between persons, one of whom is by the legal
rules of estoppel prevented from denying to the other that it
is a bill of exchange. If the estoppel is constituted, then to
the extent of the estoppel, but no further, the document as be-
tween those persons must be treated by virtue of the rules
of the general law, not of the law merchant, as if it were really
a bill of exchange. * * * * *  The similar application of the
legal rules of estoppel to the case of an estoppel as against an
acceptor in respect of indorsements on a bill accepted by him
will explain the cases in which an acceptor has been held not
to have been estopped from disputing an illegal indorsment.
It seems to me useless to name the cases which have been cited.
They all determine that the peculiar conditions applied to
bills of exchange by the law merchant are only applied to
regular and honest bills of exchange; but that documents re-
sembling bills of exchange, and dishonestly purporting to be
bills of exchange, though they are not really bills of exchange,
may have to be treated as bills of exchange, subject to the law
merchant rules of bills of exchange, if circumstances are proved
to exist between certain parties sufficient according to general
law to prevent one of them from denying to the other that the
document in certain particulars is a regular bill of exchange.
In this case the document is not a bill of exchange. It has no
real drawer and no real payee. Neither the forger nor Vucina
& Co. is a real drawer; Petridi & Co. is not a real payee. As to
the defect of the drawer, the acceptor would be estopped as
against the *bona fide* indorsee for value. If that had been the
only fault in the bill, the acceptor would have been bound to pay
it. But there is the defect of the payee and of the indorsement
which purports to be the indorsement of the payee. The ac-
ceptor in this case is not by the general law estopped as to those
defects because it is not proved that when he accepted he
knew that the payee was not a real payee." In the same case,
Bowen, L. J., said: "The instruments in question were not,
therefore, payable to bearer, and the bank having paid upon
forged indorsements must in the absence of any other ground

of defence, take the consequences. It is, however, contended on their behalf that the letters of indication justified them in paying to any person who appeared to be a *bona fide* holder of the bills. (We cannot put any such construction upon the letters of indication. They intimated, no doubt, that the documents in question were acceptances of Vagliano Brothers then in circulation, or which at the date of maturity would have become so, but they gave no authority to pay except according to the apparent tenour of the bills. The responsibility of verifying the indorsements remained, therefore, with the bank. In the case of a genuine bill the bank would have had to bear this responsibility. There was nothing in the letters of indication to relieve them from it here. * * * * There was, we think, negligence on his part in leaving so much to a clerk in Glyka's position without any effective supervision or control over his proceedings. But this was not the proximate cause of the loss which has been incurred, and therefore cannot be relied on as a defense against the claim of the plaintiff, even if there were no negligence on the part of the bank. But the officers of the bank paid the bills across the counter, and it was proved that the usual course of business was for a banker not to pay bills of so large an amount except through a banker, and the officials of the bank neglected this precaution and paid the bills over the counter to a man whom they did not know. This, in our opinion, was negligence on the part of the bank, which materially contributed to the frauds in question being successfully carried out by Glyka. This, we think, would prevent the bank from effectually relying on the defence of negligence of the plaintiff." The bills in that case had been forged by a clerk of the plaintiff, apparently in favor of an existing firm, but were in fact rank frauds, both as to drawer and payee, just as is the check in this case. The instruments involved in *First Nat'l. Bank* v. *Northwestern Nat'l. Bank*, 152 Ill. 296; *Nat'l. Bank of Marshalltown* v. *State Bank of Marshalltown*, 107 Ia. 327; *Bank* v. *Allen*, 59 Mo. 310; *Canadian Bank* v. *Bingham*, 60 L. R. A. 955; *First Nat'l. Bank of Lisbon* v. *Bank of Wyndmere*, 10 L. R. A. (N. S.) 1, and some others cited, were of the same character. In all of them, it was held that while the drawee must know the signature of the drawer and the indorsee was in no manner chargeable with duty in respect to that sig-

nature, in the absence of knowledge of its forgery or circumstances sufficient to put it on inquiry, the latter was bound to take precaution, at its end of the line, against forgery and fraud, by inquiry as to the identity of the payee, the existence of a real payee, and made to respond in money to the injured drawee for its failure to do so. *Bank of Quincy* v. *Ricker,* 71 Ill. 439, applies the principle invoqed in this case, and differs from it only in respect to the character and degree of negligence on the part of the purchasing bank. It declares that the drawee or payor of a forged check can recover back the amount paid by him on it, when the holder or payee has been at fault, or guilty of fraudulent practices which may have thrown the drawee off his guard. It says the holder must refund to the drawee, if the former has been at fault, notwithstanding the duty of the drawee to determine at his peril the genuineness of the signature of the drawer. . It recognizes the general rule and the exception, not the general rule without the exception, as do the Ohio cases and nearly all the others here relied upon. It is true the annotator in 27 L. R. A., at page 637, says the general rule "has been modified in a few cases in which fault or negligence on the part of the bank obtaining payment, which is held to have contributed to the deception of the drawee, is held ground for compelling repayment of the money to the latter"; but I do not think his words convey his exact meaning, since it must have been apparent to him that these cases do not modify the general rule. They are simply not within it, because they do not involve the facts on which the general rule is based, showing innocence in both parties. The courts in deciding them said so. Having made this statement, the annotator sets forth a number of well considered cases, excepted by the courts from the operation of the rule, on the ground that the facts did not bring them within it, but none of them denied the soundness of the general rule. In 10 L. R. A. (N. S.) the annotators, at page 58, say: "And the prevailing rule would appear to be that a bank which cashes a check drawn upon another bank without requiring proof as to the identity of the person presenting the same or making inquiry in regard to him, the amount of which check is afterwards paid to it by the drawee, is liable to the drawee for the amount so paid, where the check proves to be a forgery; it hav-

ing been guilty of the first fault." Although in *Corn Ex. Bank*
v. *Nassau Bank,* 91 N. Y. 74, the signatures of the payees
only, not of the drawers, were forged, I think the principles de-
clared in it are applicable. As to the liability of a purchaser,
negligent in respect to the endorsement, to the extent of paying
on a forgery thereof, no reason for a distinction between a bill
bearing the genuine signature of the drawer and one to which
the signature of a person has been forged as drawer, is per-
ceived. In both cases his negligence may inflict injury upon
the drawee or contribute thereto. *White* v. *Bank,* 64 N. Y.
313, is found on re-examination to be inapplicable. The check,
bearing genuine signatures, but having been fraudulently raised
in amount, is governed by entirely different rules, which need
not be stated here. *First Nat'l Bank* v. *Nat'l Bank,* 58 O. St
207, does not overrule the case in 4 O. St. 628, nor is it in con-
flict with the views expressed in this opinion. The payee was
known to the purchasing bank. He endorsed the check, and,
on principles of estoppel, the endorsement was treated as genu-
ine, though in fact there was no drawer, no payee, no indorse-
ment. Besides, the endorsement of the purchasing bank was
"for collection," not absolute and unrestricted, wherefore the
case was distinguished from the class in which endorsements are
unrestricted, as was done in *Bank of Chicago* v. *Bank of Com-
merce,* 107 Mo. 402, and *Nat'l. Park Bank* v. *Seaboard Bank,*
114 N. Y. 28. In neither of these cases, however, was there
any negligence in respect to the endorsement of the payee, as
to which duty rested upon the collecting bank. Had there
been, the decisions might have been different. In the case in
115 Tennessee, criticising the ruling in 88 Tenn. referred to,
the check was payable to a certain person or bearer. Such a
check requires no endorsement, and, of course, no duty rested
upon the bank to require proof of identity of the payee. "If
the bill is payable to order, it is an authority to pay the bill to
any person who becomes holder by a genuine indorsement. If
the bill is originally payable to bearer it is an authority to pay
the bill to the person who is the holder." *Vagliano Bros.* v.
*Bank of England,* 23 Q. B. D. 255; *Robarts* v. *Tucker,* 16 A.
& E. (N. S.) (71 E. C. L.) 560. Nothing in that case called
upon the court to re-examine the ruling in the former, and its
expression of disapproval is *obiter.* Besides the opinion sets

forth no reasoning or examination of authorities as a basis for the criticism. Moreover, the opinion says there was negligence on the part of the purchasing bank, in the first case, and none in the latter, and marks a plain distinction on that ground. The quotation from the opinion in *Germania Bank* v. *Boutell,* 60 Minn. 189, sets forth the views and opinion of an able judge, respecting the very point under discussion here. The rule applied here did not apply in his case, for the payee was identified and there had been no negligence on the part of the defendant. But this obiter of Judge Mitchell's is entitled to as much weight as the dicta of other judges and the opinions of text writers.

By its conduct, the McDowell County Bank induced the Bank of Williamson to do what it refrained from doing itself, pay money to an unidentified stranger. In fact, it took the check for collection, instead of purchasing it, because the party claiming to be payee was unknown to it, and refused to pay him the money until it had collected the same. If it had told the Bank of Williamson the status of the matter, that bank would have been more cautious. It not only did not do this, but, on the contrary, endorsed the check as if it had been bought outright, and expressly guaranteed the genuineness of the forged endorsement "George Horner." This was a representation to the Williamson bank that there was a George Horner, and that he was the payee, having right to the money, and had transferred that right to the bank, and, possibly, that he was good for $800.00 in case the check should prove to be worthless. I am unable to perceive the reason or ground upon which it can be said that such a representation may not have induced action on the faith of it, and, was not dangerous to the party to whom it was made.

But there is another element in the case. The Bank of Williamson was also negligent. It had no signature of its depositor in its possession or within its reach, in any form whatever, to enable it to make any investigation of the genuineness of the signature to the check. As we have shown, no recovery can be had, if both parties are without fault. Negligence or omission of duty, on the part of the first taker, causing, or likely to cause, injury to the drawee, is the circumstance that deprives the for-

mer of the benefit of the exemption of dealers in commercial paper from the operation of the general rule, allowing recovery of money paid under a mistake of fact. Failure of duty, not necessarily the actual cause of the injury, has this effect. No inquiry as to whether the drawee was really misled, is made. It is enough that there was technical negligence. The exemption rests upon the assumption of innocence in both parties. If both are at fault, as in this case, it seems to follow that neither, while claiming, or accorded, the benefit of the exception to the general rule, should be permitted to deny its protection to the other. It is an arbitrary rule of commercial law, and the reasoning which justifies it, when both parties are innocent, justifies it also, when both parties are at fault. It was the duty of the drawee to determine, at its peril, the genuineness of the signature of its depositor, and its sole right to demand reimbursement from the defendant rests upon technical fault in the latter. This may or may not have occasioned the injury to the former, but an arbitrary rule, founded upon public policy, imposes liability, without inquiry as to actual cause of injury. Public policy demands, with equal reason, the observance of due care and compliance with the customary regulations, on the part of the drawee. Who can safely say the Bank of Williamson would not have discovered the forgery and saved the money it has lost, if it had taken the usual precaution? Though the forged name and the genuine signature are very similar, even the slight difference might have been noticed had a comparison been made at the time. Similarly, nobody can say with certainty the omission of duty on the part of the McDowell County Bank influenced the other bank in the slightest degree, but it may have done so, and instances may occur in which the wrong is perfectly apparent. It is a question, not of actual, but of potential, injury, and the enforcement of compliance with wholesome regulations. Therefore, having been negligent itself, the plaintiff is not entitled to recover on the technical ground of negligence in the defendant.

It is suggested in a brief that the recovery should be had from the Mingo County Bank, if at all. The effect of this would be to make a clearly innocent party suffer loss, due to mistake or negligence of others. For even so plain a proposition as the

contrary of this we have authority. *Bank* v. *Bank,* 107 Ia. 327; *Bank* v. *Bank,* 22 Neb. 769.

These views and conclusions result in an affirmance of the judgment complained of.

*Affirmed.*

BRANNON, JUDGE, (*concurring in result*) :

I cannot agree to a part of Judge POFFENBARGER's opinion. It disregards the law as laid down in 1762 by Chief Justice Mansfield in *Price* v. *Neal,* 3 Burr 1355, which, as Justice Story said in *U. S. Bank* v. *Bank of Georgia,* 10 Wheat. p. 349, has ever since been recognized in England and America as a rule of commercial law and of property. That rule is, that the bank on which a check is drawn must know the hand writing of its depositor, and if it receives a check and pays it, it cannot recover back from a *bona fide* holder for value. A multitude of decisions so hold. Our own case of *Johnson* v. *Bank,* 27 W. Va. 343, strongly recognizes this rule. It is spoken of as law in 18 Grat. page 359. See *U. S. Bank* v. *Bank of Georgia,* 10 Wheat. page 349; *Levy* v. *Bank,* 4 Dallas 234; *Hoffman* v. *Bank,* 12 Wall. 181; *Commercial Bank* v. *First Nat. Bank,* 96 Amer. Dec. 554 and note; *Dedham Bank* v. *Everett Bank,* 83 Am. St. R. 286; *Bank* v. *Bank,* 44 L. R. A. 131; *Germania Bank* v. *Boutell,* 27 L. R. A. 635; *Neal* v. *Coburn,* 92 Me. 139 (69 Am. St. R. 495); *Hardy* v. *Bank,* 151 Md. 585 (34 Amer. R. 325); *Crocker Bank* v. *Nevada,* 96 Amer. St. R. 169, a strong case. The negligence which the opinion in this case imputes to the McDowell Bank is that it did not require Horner to identify himself. It cannot be claimed that it was the duty of the McDowell Bank to inquire as to the signature of Young, the maker of the check, and as the court said in *Germania Bank Case,* above, the Williamson Bank had no right to suppose that the McDowell Bank had inquired as to the signature of the depositor of the Williamson Bank. Now, can we assume that inquiry as to the identity of Horner would have scared the forger away and prevented his leaving the check with the McDowell Bank? Is not this assumption too far fetched? Shall this omission relieve the Williamson Bank from the duty of knowing Young's signature?

But for its negligence of a fixed duty the loss would not have occurred.    This exception because of negligence in the first bank is denied in *Bank* v. *Bank,* 10 Vt. 141, and *Commercial Bank* v. *First Nat. Bank, supra,* and *Howard* v. *Miss. Valley Bank,* 26 Am. R. 105. In the well considered case of *Salt Springs Bank* v. *Syracuse Bank,* 62 Barbour 101, a bank paid a forged check, "without inquiry, supposing it to be genuine".    The presenter was a stranger.    The court held that this did not take from the bank the character of a *bona fide* holder, and it was held not liable. As said in note, 44 L. R. A. 637, a few cases make such exception to the general rule; but the older cases, the great current, do not make it. It is called the "modern rule" in Morse on Banks, section 466. Under the decision in this case a bank cannot buy, cash or take for collection a check without having its payee identify himself. After writing to this point I find the case of *Farmers' & Merchants' Bank* v. *Bank of Rutherford,* 115 Tenn. 64 (112 Am. St. R. 817) holding, contrary to *Peoples' Bank* v. *Franklin Bank,* 88 Tenn. 299 (17 Amer. St. R. 884) and virtually overruling it. The case in both syllabus and opinion lays down this rule of law: "A check payable to a certain person or bearer need not be endorsed, nor need the holder be identified, and a bank paying such check without identification of the holder is not negligent, though the bank, in compliance with its custom, required it to be endorsed". A check was presented by one bank and transmitted to the bank on which it was drawn and paid by it and the latter bank was refused right to recover back, although the bank taking the check made no inquiry as to the presenter. The opinion seeks to make a distinction between the case in hand and the former case on the ground that the check was payable to a person named or bearer; but if inquiry as to the identity of the presenter was necessary, why not in either case? The case in 88 Tennessee had held that the first bank must identify the presenter, but the later case pointedly dispenses with that and condemns the prior case of *Peoples' Bank* v. *Franklin Bank* in the following strong language: "As an original propositon we would not assent to the correctness of *Peoples' Bank* v. *Franklin Bank,* 88 Tenn. 299 (17 Amer. St. R. 884),

and we think the great weight of authority is against it, and that it is contrary to one of the most important rules regulating the law of negotiable instruments, to-wit, that the drawee of the check should be held to know the signature of its customers and pay only such paper as has a genuine signature".

Still later, just now, I come across the case of *Bank* v. *Bank*, 58 Ohio St. 207 (41 L. R. A. 584), holding that "The general rule that the drawee of a check, draft or bill of exchange, is held to know the signature of the drawer, and makes payment at his own peril has not been modified in this state, *except by local custom*, as held in *Ellis and Morton* v. *Ohio Life Ins. & Trust Co.*, 4 Ohio St. 628." So, we see that the early Ohio case so often cited against the old rule has been disapproved in the later Ohio case and made applicable only where local custom governs it. This old Ohio case cannot be cited to support the other doctrine. It has been repudiated in the state of its birth. No case asserts with more force the old rule of *Price* v. *Neal* than this late Ohio case, and it deprives the former case of all force to impair that rule by saying that local custom controlled it. Moreover, it says that bank usage now does not allow the endorsement of "For Collection", and it is not used now, and that a general endorsement does not warrant the payee bank in assuming that all was right or change its duty of care to see that the drawer's signature is genuine. This position is sustained by *Woofman* v. *Bank;* 12 Wallace 181 (20 L. Ed. 366). The very late work, Joyce on Defences to Commercial Papers, section 99, lays it down as settled law.

Referring again to our own case of *Johnson* v. *Bank,* 27 W. Va. 343, I assert that a careful reading will sustain my position. Its principles govern the case now in hand. In fact, the point of the decision governs this case. A negotiable note was forged. It was taken up by a bank. When presented Johnson paid it to the bank. Later he discovered that his name had been forged. He brought suit to recover back the money from the bank, but he was denied recovery. And why? It was under the old rule of *Price* v. *Neal* that the maker of the note was bound to know his signature and if he neglected to do so or

was mistaken, he could not recover the money back. So in the case of a bank check. The bank must know the signature of its depositor. What is the difference between the two cases? I do not see how the force of that decision can be evaded as applying to this case.

In the present case the McDowell Bank did not cash the check, but refused to do so, and received it for collection and sent it to the Williamson Bank to ask whether it was genuine or not, and the Williamson Bank pronounced it good, and on receiving information that the Williamson Bank had paid it, and not till then, the McDowell bank paid the money to the man who left the check with it for collection. On reading some of the cases it will be found that there is a difference between the case where the first bank pays the check at once, and that where it waits till the bank on which the check is approves it. In *Espy* v. *Bank,* 18 Wall. 604, it is held that "where the party to whom a check is offered sends it to the bank on which it is drawn for information, the law presumes that the bank has knowledge of the drawer's signature, and of the state of his account, and it is responsible for what may be replied on these points." There is another consideration here. Where the first bank has already paid, the mistake of the other bank does not hurt the former, does not alter its condition for the worse, because its money is gone into the rascal's pocket, and the second bank can recover from the first because the first bank cannot say that it was led to its loss by the negligence of the second bank. It is a rule of estoppel that to bind one making a mistatement another must be induced by it to alter his condition for the worse. Such is a controling element in the case so much relied on, *Canadian Bank* v. *Bank of Commerce,* 30 Wash. 484 (60 L. R. A. 955), as the court states in the opinion, though not in the syllabus of the official report quoted by Judge POFFENBARGER. The syllabus in L. R. A. so qualifies, and correctly states the facts entering into the decision.

The leading case of *McKleroy v. Southern Bank,* 14 La. Ann. 458 (74 Am.. Dec. 438), points out this distinction. On the facts of our case that case would deny recovery. Likewise Daniels Nego. Inst., section 1655a, (5th Ed.), and 185 N. Y.

368. *Neal* v. *Coburn,* 69 Am. St. R. 495, denies recovery back even where no loss occurs.

In a note, just found, to *First Nat. Bank* v. *Bank of Windmere,* 10 L. R. A. (N. S.)1 (108 N. W. 546), the North Dakota court admits the rule of no recovery back as fixed by the vast current of cases, but condemns the rule, and refuses to adopt it as the law of the new state.     It holds that the drawee of a forged check may recover back from an innocent · holder, "Provided the latter has not been misled or prejudiced by the drawee's failure to detect the forgery". This makes recovery depend on whether the first bank has been harmed. The court said that the rule of negligence is uncertain, not simple as the old rule of *Price* v. *Neal* and therefore it refused to follow *Price* v. *Neal.* There will be found a full array of authorities upon all the views of this matter. On page 65 it will be seen that many cases say that recovery back depends on whether the defendant would suffer loss.     Of course, if the holder is guilty of fraud or gross negligence actually misleading the second bank, it would be different; but as the only negligence in this case is failure to identify Horner, and the check was taken for collection in usual course of business, I do not think recovery can be had. If the Mc-Dowell Bank had cashed the check before sending it on for inquiry and payment, it could not say that it was prejudiced by the act of the Williamson Bank in honoring the check; but that is not the case we decide. "Where a bank on which a raised draft is drawn pays it through mistake upon its presentation to it by a correspondent bank, as agent, to which it is forwarded for collection, the collecting bank cannot be compelled to repay it if it has paid over to its principal before notice of the mistake". *National Park Bank* v. *Seaboard Bank,* 114 N. Y. 28 (11 Amer. St. R. 612). 5 Cyc. 549 says, that the presenter must refund, "provided his condition has not in the mean time changed so as to render repayment unjust." This distinction is found in 5 Am. & Eng. Ency. L. 1071, where we read this: "As has been stated, the bank is bound to know the signature of its depositor, and therefore if it pays out money on a check to which its depositor's name has been forged, to a *bona fide* holder for value, it cannot recover the money so

paid out. This has been the rule almost universally laid down by the courts, the law declaring that as between parties equally innocent the loss must remain where the course of business has placed it. With singular unanimity, however, the text writers have modified this rule with the proviso, 'unless it can be shown that the payee or endorsee, the party receiving the money, will in no way be prejudiced by the re-payment, insisting that the general rule as to money paid under mistake of fact should apply' ". The Williamson Bank's action in sending word that the check was good was the sole cause inducing the McDowell Bank paying out the money. It caused the loss.

Let me concede that the McDowell Bank was negligent, for argument's sake. Nobody will deny that the Bank of Williamson was negligent in not knowing or ascertaining the true signature of the drawer of the check. Without question the primary duty was upon it. It was more its duty to inquire than that of the McDowell Bank. This being so, we have but to apply the common doctrine of contributory negligence to defeat the recovery; for in questions of negligence he who is guilty of any negligence that is a factor in the damage can not recover.

But aside from that reason against recovery, the very nature of the action of *assumpsit* for money had and received forbids recovery. Remember that the McDowell Bank did not pay the check when asked to cash it, but waited till it could send the check for payment to the Williamson Bank, and only when the Williamson Bank pronounced it genuine did the McDowell Bank pay it. Thus the act of the Williamson Bank *misled* the McDowell Bank, and now to let the Williamson Bank recover would impose a loss on the McDowell Bank for negligence of the Williamson Bank. This would be contrary to the very basis of the action of *assumpsit* for money had and received. It is governed by principles of a court of equity. The party to recover must show that he had equity and conscience on his side. "It lies only for money which, *ex equo et bono* the defendant ought to refund." A definition of this action on common law principles will be found in the case cited next. But here the Williamson Bank caused the loss, and authorities already cited prove that for that cause, in such a case as this,

66 W. Va.

there can be no recovery. This doctrine will be found at large in the able opinion in *Crocker-Woolworth Bank* v. *Nevada Bank*, 139 Cal. 564 (96 Am. St. R. 169).

Even though parties are equally innocent the loss falls where the parties themselves placed it is said in that case upon authority of *Holly* v. *Missionary*, 180 U. S. 284. Of course, I agree with Judge POFFENBARGER in finding the Williamson Bank negligent in failing to keep a signature of the drawer of the check for comparison; but I wholly dissent from Judge POFFENBARGER in saying that the failure of the McDowell Bank to investigate as to the presenter of the check and his right to it would render it liable. The McDowell Bank owed no duty to the Williamson Bank to inquire. Mere silence or non-inquiry would not make it liable. It would take some *affirmative* negligence or wrong to do so; for instance, if it knew the presenter was an imposter, or had reason to know it, or knew of circumstances arousing suspicion, and failed to inform or warn the Williamson Bank.

I cannot agree to introduce technical exceptions, dependent on uncertain oral evidence, to the rule so long applied and shake a rule of safety in commercial paper, important to the business community. A few cases do introduce exceptions; but the great volume of cases state the rule without any such light exception as that asserted by Judge POFFENBARGER in this case. I especially decline to make the McDowell Bank liable when it would not have paid the check but for the assurance by the Williamson Bank that it was good.

Many of the cases cited by Judge POFFENBARGER as to the negligence of failing to identify Young do not apply. Some relate to forged names of endorsers, not makers. The bank is not held to know endorsers names. Other cases are on particular facts. *Corn Ex. Bank* v. *Nassau Bank,* was a case of forged endorsement. The case says that the drawee bank is not held to know anything but the name of the drawer, thus admitting that it is bound for that. *White* v. *Bank,* 64 N. Y. 316, says that the drawee of a bill of exchange, "by accepting and paying only vouches for the *signature of the drawer* not of the body of the bill," thus admitting the old rule. It was a raised bill. *Turnbull* v. *Bowyer,* 40 N. Y. ——, was

an endorsee suing a prior indorser on a check when the payee's name was forged, not the drawer's. These cases do not involve negligence; they do not say that a bank paying a check on it can recover of the first bank because it failed to see to the identity of the payee. Negligence did not govern these cases. *First Nat. Bank* v. *N. W. Nat. Bank,* 43 Am. St. R. 247, was a forged endorsement, not dependent on negligence. It declares that the drawee bank must know the drawer's signature. *First Nat. Bank* v. *Bank of Marshalltown,* 44 L. R. A. 131, was a forged endorsement. The opinion expresses the opinion that one taking a check must inquire; but the case did not go upon negligence.     *Bank of Quincy,* 71 Ill. 439, was where a bank took a check knowing circumstances to arouse suspicion, but failed to inform the drawee bank. This was positive wrong. *Bank* v. *Allen,* 59 Mo. 310, was where the check was genuine, but altered in amount. Now, the bank on which the check was could not be held to know of this alteration, as it bore no mark of suspicion. It was not a case of forgery of the name of the maker. It was as much the duty of the bank cashing the check to see the alteration as it was of the second bank. I fail to see how these cases hold the first bank liable for failure to inquire as to the identity of the presenter. They do not turn on his identity. The quotation made by Judge POFFENBARGER from *Germania Bank* v. *Boutell,* 51 Am. R. 519, is merely an *obiter* opinion, because there was no question of failure to identify, but merely stated as a proper qualification of the general rule, in the judge's opinion. The only point of decision in the case supports the old rule in the following syllabus, the only point in it: "A banker upon whom a forged check has been drawn cannot, upon discovery of the forgery, recover the amount from a *bona fide* holder to whom he has paid it". Why cite a mere *obiter* as a decision fixing a rule? There was no question of the first bank failing to inquire. The decision denied recovery to the drawee bank. *First Nat. Bank of Crawfordsville,* 4 Ind. App. 355, involved no element of failure by the first bank to identify the holder, but held it liable because the court held the endorsement "For Collection" gave credit to the check and misled the bank to pay. The liability was based on the endorsement. The court

did not say that the first bank was liable because it failed to identify the presenter. Manifestly the case was decided wrong. Look over these cases carefully, and I venture to say that none of them involve failure to identify the payee, or hold such failure negligence creating liability, except the Massachusetts, Ohio and Tennessee cases, since disapproved.

Judge POFFENBARGER seems to think that it makes no difference whether the forged name is that of the payee or maker of the check. There is a big difference. The next endorser insures the genuineness of a prior endorser's name to a later endorser and the payee bank. The payee bank is not bound to know the signature of an indorser, but is bound to know the signature of the maker of the check, because he is a depositor in the bank. When the endorser's name is forged the bank can recover back, because that is the case of mistake only, without duty to discover; it has paid money to one, not entitled to receive, on no consideration; but when it pays to a holder on a forged name of the maker of the check, it cannot recover back, because it was bound to know the maker's signature, and having paid the first bank, and that bank having paid out the money on the faith of the payee bank's admission that the name of its depositor was genuine, it cannot recover back the money.