FIRST NATIONAL BANK OF ORLEANS, PLAINTIFF IN
ERROR, V. THE STATE BANK OF ALMA, DEFEND-
ANT IN ERROR.

Negotiable Instruments: FORGED CHECKS: LIABILITY OF
BANK. A stranger presented to the bank of O. a check pur-
porting to be drawn by one C. on the bank of A. for $385. The
cashier of the bank of O. compared the signature of the pur-
ported drawer with his genuine signature in a book kept by
such cashier, and paid the check without requiring proof as to
the identity of the person presenting the same or making inqui-
ries in regard to him. The check was sent to a bank in Lin-
coln, and there credited to the bank at O., and by the Lincoln
bank sent to the bank at A., on which it was drawn, and was
paid by such bank. Several days afterwards it was discovered
that the check was a forgery, and notice was thereupon given
to the bank at Lincoln and also at O. *Held,* That the bank
at O. was liable for the amount received by it on the check.

ERROR to the district court for Harlan county. Tried
below before GASLIN, J.

*W. S. Morlan,* for plaintiff in error, cited: 1 Randolph
Commercial Paper, Sec. 168. 1 Daniels Neg. Inst., Sec.
533. Parsons Notes and Bills, 590. *Levey v. Bank of U.
S.,* 1 Bin. (Pa.), 27. *Bank of U. S. v. Bank of Georgia,*
10 Wheaton, 333. *Ellis v. Ohio Life Ins. Co.,* 4 Ohio
State, 633.

*John Dawson,* for defendant in error, cited: *Natl. Bank
of North America v. Bangs,* 106 Mass., 441. *Ellis v. Ohio
Life Insurance Co.,* 4 Ohio State, 650. *Terry v. Bissell,*
26 Conn., 23. *Third National Bank v. Allen,* 59 Mo.,
311. *Espy v. Bank,* 18 Wall., 604. *Merchants Bank v.
McIntyre,* 2 Sandf., 431.

MAXWELL, CH. J.

The case was submitted to the court below upon a stip-
ulation of facts, as follows: "For the purpose of this ac-

tion this case is submitted by the plaintiff and defendant upon the following statement of agreed facts : On or about the 1st day of January, 1886, a stranger appeared at the counter of the First National Bank of Orleans, Nebraska, and presented the foregoing check, marked 'A.' At the date of the said check and its presentation, and for a long time prior thereto, B. R. Claypool, whose check it was represented to be, was a customer of the First National Bank of Orleans, and also the State Bank of Alma, and each bank had money to his credit subject to check. And both of said banks supposed that they were acquainted with his signature. The cashier of the First National Bank of Orleans was unacquainted with the person who presented the check, and did not request him to produce any proof as to being the person entitled to the money on the check. Neither was he identified as being the A. J. Gype mentioned in the said check before paying the check. The cashier compared the signature of B. R. Claypool on the check with his genuine signature on the signature book of said bank, for the purpose of ascertaining its genuineness, and after said comparison believed said signature to be genuine, and thereupon paid said check, charging the person who purported to be A. J. Gype the sum of eighty cents exchange. At the time of paying said check said Claypool had money in the bank paying said check sufficient to pay said check. That on the 1st day of January, 1886, said First National Bank of Orleans transmitted said check to the Capital National Bank of Lincoln, which bank at the time, and was for a long time prior to that time, a correspondent of both the State Bank of Alma and the First National Bank of Orleans, Nebraska, and none of the foregoing facts were known to the Capital National Bank. That upon the receipt of said check the Capital National Bank of Lincoln, to-wit, on the 2d day of January, 1886, credited the First National Bank of Orleans with the amount of said check, and on the 4th day of January, 1886, forwarded it to the

State Bank of Alma and charged the State Bank of Alma with that amount. Said check was endorsed both by the Capital National Bank and the First National Bank of Orleans, as appears endorsed on said check. On the 5th day of January, 1886, upon the arrival of said check at the State Bank of Alma, said bank paid the same by giving the Capital National Bank credit for the same, not knowing at the time that said check was forged. That said check was a forgery and the name of Claypool was never written by him or by his authority. On the 23d day of January, 1886, when the bank book of said Claypool was balanced at the State Bank of Alma and his checks were presented to him which had been paid by said bank, he denied the genuineness of this check in controversy, which was the first the State Bank officers knew of said check being a forgery. After knowing said check was forged, to-wit, on the 24th day of January, 1886, the State Bank officers notified both the Capital National Bank and the First National Bank of Orleans that said check was forged and charged the same back to the Capital National Bank of Lincoln, and forwarded said check to Lincoln to the Capital National Bank, who refused to take the same or to credit the State Bank with the amount thereof. That the signature of said check was very similar to the genuine signature of said Claypool; that said A. J. Gype, the payee of said check has not been heard of since the payment of said check by the First National Bank of Orleans, and was an entire stranger to all of said banks above mentioned before the presentment and payment of said check. That if the Capital National Bank is liable according to the above agreed statement of facts to the State Bank of Alma for the amount of said check, then it is agreed that judgment be given against the First National Bank of Orleans instead of the Capital National Bank.

"If under the foregoing state of facts an action would lie in favor of the State Bank of Alma directly against the

First National Bank of Orleans, and it would be liable to the State Bank under this agreed statement of facts, then judgment shall be given accordingly."

The following is a copy of the check :

"$385.00.                    ALMA, NEB., Dec. 18, 1885.

"State Bank of Alma, pay to A. J. Gype, of Alma, Neb., or bearer, three hundred and eighty-five dollars.

                              "B. R. CLAYPOOL."

On the trial of the cause the court found in favor of the State Bank of Alma.

On principle it would seem that a bank paying a forged check drawn on another bank would do so at its peril. That where it is proposed to draw funds belonging to another by means of a check that such check should be drawn by the proper authority. The bank to which the check is presented by a stranger may require his identification and proof that he is the lawful holder of the check. It must take the necessary steps to ascertain the genuineness of the instrument and the identity of the person presenting it, or in case of loss from such neglect it will be the party at fault. A bank receiving a check from one which has paid it may rightfully assume that the paying bank required the necessary proof, both as to the genuineness of the instrument and the authority of the holder to receive the money thereon. Ordinarily it will not be known in the second bank that the person presenting the check to the bank paying the same was a stranger and no identification was required. Nor can it be known that the drawer was not present in the bank when the check was presented and paid. The second bank, therefore, having received the check from a creditable bank, may assume that it has taken the necessary precautions to ascertain the genuineness of the signature and the identity of the person presenting the check. In this case had the plaintiff in error required the holder of the check to prove who

he was and the manner in which he came by the check, in all probability he would have declined the ordeal and the check would not have been paid. The loss, therefore, may be traced directly to the plaintiff's negligence.

The case of *Ellis v. Ohio Life Ins. and Trust Co.*, 4 O. S., 628, is similar in many respects to that under consideration. It is said, page 662 : " To entitle the holder to retain money obtained by mistake upon a forged instrument, he must occupy the vantage ground by putting the drawer alone in the wrong ; and he must be able truthfully to assert that he put the whole responsibility upon the drawer and relied upon him to decide, and that the mistake arising from his negligence cannot now be corrected without placing the holder in a worse position than though payment had been refused. If the holder cannot . say this, and especially if the failure to detect the forgery, and consequent loss, can be traced to his own disregard of duty, in negligently omitting to exercise some precaution which he had undertaken to perform, he fails to establish a superior equity to the money, and can not with a good conscience retain it. To allow him to do so, would be to permit him to take advantage of his own wrong, and to pervert a rule designed for his protection against the negligence of the drawer into one for doing injustice to him." See also *Goddard v. Merchants Bank*, 4 Comst., 147. *Bank of Commerce v. The Union Bank*, 3 Id., 230. *Canal Bank v. The Bank of Albany*, 1 Hill, 287.

In the last case the endorsement of the payee was forged and the money paid by the drawers was recovered back, although the forgery was not discovered for two months after payment and the remedy against the other endorsers was lost.

In *Third National Bank v. Allen*, 59 Mo., 311, where a bank having paid to a stranger a check drawn upon another bank and collected the amount from the latter, at the time of the payment neither bank was aware of the

forgery.   The next day after the payment the bank on which the check was drawn ascertained the forgery, and on that day or the succeeding one notified the first bank of that fact.   It was held that the notice was given in a reasonable time and that the money could be recovered back.

In that case the money had been drawn on a check for the sum of $20, payable to a stranger, who, before presenting it to the bank, had altered it by substituting $328.68 in place of $20, and also by changing the name of the payer, the signature to the check being genuine.

In *Espy v. Bank of Cincinnati*, 18 Wallace, 604, a check was drawn by Stall & Meyer on the defendant for $26.50, in favor of Mrs. Hart.   This was raised by substituting $3,920 for $26.50, and the name of Espy, Heidlebach & Co. for that of Mrs. Hart as payee.   The check thus altered was presented to the bank and paid by it through the clearing house.   The court held if this were all the case there would be no doubt of the right to recover.   E., H. & Co., however, had sent the check to the bank before paying the same, and were informed that it was good, a question which does not arise in this case.

After a careful examination of the authorities we have no doubt that a party who pays a forged check does so at his peril, and if by means of his endorsement and use of the same he thereby obtains money from another he is liable for the amount thus received.   The Capital National Bank and also the State Bank of Alma had the right to assume that an instrument sent forth with an endorsement of the plaintiffs, on which they received value, was genuine.

There is no error in the record and the judgment of the district court is affirmed.   -

JUDGMENT AFFIRMED.

THE other judges concur.