## AMERICAN EXPRESS CO. v. STATE NAT. BANK.

No. 682. Opinion Filed January 10, 1911.

**BANKS AND BANKING—Payment of Forged Check—Right to Recover from Payee.** A payee receiving money from a bank upon a check purporting to be drawn upon it by one of its depositors but the signature of which was in fact forged, is not entitled to retain the same, except upon the following combination of facts: First, that the payee was not negligent in receiving the check; second, that the payor was lacking in due care in paying the same; and third, that upon the payor's action the payee has changed his position or would be in a worse condition if the mistake was corrected than if the payor had refused to pay the check at the time of its presentment.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; Geo. W. Clark, Judge.*

*Flynn, Ames & Chambers,* for plaintiff in error.

*Harris & Wilson* and *Whit M. Grant,* for defendant in error.

KANE, J.   This was an action commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, to recover back the sum of $852.55 paid by said bank to the express company on a forged check.   Upon trial to a jury, there was a verdict for the plaintiff, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

The facts upon which the main proposition of law presented by counsel is based are undisputed, and are substantially as follows:   On the 24th day of August, 1904, Weaver & Seaver were subagents of the American Express Company in Oklahoma City and had authority to issue money orders for and on behalf of the express company to parties applying therefor.   On this date Mr. Weaver of the firm received a telephone call from a person claiming to be A. C. Weiker, president of the O. K. Transfer & Storage Company, asking him if he would issue money orders to the amount of $850 and take the check of the company in payment thereof. Weaver said he would, and the person talking over the 'phone said he would send the check for the amount of the money orders right away.   Shortly afterwards one R. W. Twombly, the bookkeeper and cashier of the company, came to Mr. Weaver and presented the check signed, "O. K. Transfer & Storage Company, by A. C. Weiker, president," for $852.55, upon receipt of which Mr. Weaver issued the money orders for $850 and delivered the same to Twombly.   The next day Weaver endorsed the check and turned same over to the express company and on the following day the express company presented the check to the State National Bank and the bank accepted the same and paid the money to the express company.   Twenty days thereafter it was discovered that the name of A. C. Weiker had been forged to the check, and the bank immediately demanded of the express company the repayment of $852.55, which the express company refused, whereupon said action was commenced.   The check was made payable

to Weaver & Seaver. The O. K. Transfer & Storage Company were depositors with the State National Bank, and the custom of the O. K. Transfer & Storage Company was to sign checks as this one was signed.

Counsel for plaintiff in error contend that the law applicable to the foregoing facts is that when a bank pays to an innocent holder who came into the possession thereof without any fault on his part the amount of a check purporting to be drawn upon it by one of its depositors, but the signature of which was in fact forged, the bank cannot recover back the amount from such holder. The court below submitted the case to the jury upon the theory that, although the express company may not have been negligent in accepting the check, still, if the payment thereof by the bank did not put the payee in a worse position than if payment had been refused, the bank was entitled to recover. The old doctrine was that a bank was bound to know its correspondent's signature, and could not recover money paid upon a forgery of the drawer's name, because, it was said, the drawee was negligent not to know the forgery, and, having parted with his money by reason of his own negligence, he cannot be permitted to recover it back when he afterwards discovers his error. The leading case sustaining this proposition is *Price v. Neal*, 3 Burr, 1354, decided in 1762. A great many of the courts that continue to follow the old rule criticise it, but follow it upon the ground that it has been established by decisions which have been so long acted upon that it is not proper to disturb them. All the text-book writers on banks and banking that we have access to disapprove the old rule as unsound and unjust. Mr. Morse says of it:

"This doctrine is fast fading into the misty past, where it belongs. It is almost dead, the funeral notices are ready, and no tears will be shed, for it was founded in misconception of the fundamental principles of law and common sense." (2 Morse on Banks & Banking, sec. 464.)

Mr. Bolles says it is a hard rule:

"It runs against the great rule, that money paid by mistake

may be recovered back, which is constantly growing in judicial favor." (2 Bolles Modern Law of Banking, 721.)

Magee and Zane say that the rule formerly prevailing has been modified by the courts with a view to doing equity between parties. Cyc. states the modern rule to be that:

"When payment is made to the holder of (forged) paper who has come into possession of it without any fault on his part, and his situation would be rendered worse if compelled to refund than it was before receiving payment, the money cannot be recovered from him. If, however, he has been negligent in any regard, he cannot retain the money. To justify him in doing so the bank alone must have been negligent. If neither party has been negligent, or both have been, then the bank can recover the money." (5 Cyc. 546-7.)

A great many authorities are compiled in a note purporting to sustain the text, and all do so, we think, to a greater or less extent. That the old rule is unsound and illogical is unquestionably true. It is based upon the theory that the mere fact that B. was negligent gives A. a right to B.'s property, which A. did not have before the negligence, without regard to the question whether A. has sustained any loss by the negligence or not. In any other case involving the question of negligence it is not enough to create legal liability, or to give A. a right to acquire or retain the property of B., to show merely that B. has been negligent. One more element is necessary, namely, that damage to A., being himself innocent in the matter, should naturally and proximately result from B.'s negligence. 2 Morse, *supra*. No good reason occurs to us why the foregoing rule should not be applied to forgery cases in this state. If there was a reason for the exception originally, it does not exist at the present time in this new state. We have not the same reasons for following this unsound precedent that exist in the older states. The old rule has not become a part of our common law by general usage or custom, nor has it been expressly or impliedly made part of our law by statute. Moreover, we are not the first to tread the path that leads away from the old rule. We find it explored by the text writers and blazed by the decisions of courts of high authority.

Without any actual change in the abstract doctrine as stated by the old rule, the gradual but sure tendency of the modern decisions is to put as heavy a burden of responsibility upon the payee as upon the drawee, until the interesting question has come to be, whether or not the payee has done his full duty; or if he has and the negligence is with the bank, whether the payee will be worse off by correcting the error than if payment had been refused. In *Ellis v. Ohio Ins. & Trs. Co.*, 4 Ohio St. 628, it was held that:

"To entitle the holder to retain money obtained by mistake upon a forged instrument, he must occupy the vantage ground, by putting the drawee alone in the wrong; and he must be able truthfully to assert that he put the whole responsibility upon the drawee, and relied upon him to decide, and that the mistake arising from his negligence cannot now be corrected without placing the holder in a worse position than though payment had been refused. If the holder cannot say this, and especially if the failure to detect the forgery, and consequent loss, can be traced to his own disregard of duty, in negligently omitting to exercise some precaution which he had undertaken to perform, he fails to establish a superior equity to the money, and cannot with a good conscience retain it."

Other cases that modify the old rule are: *The Canadian Bank of Commerce Case*, 30 Wash. 484; *Bank of Danvers v. Bank of Salem*, 151 Mass. 280; *Bank v. Ricker*, 71 Ill. 439; *Bank v. Bank*, 22 Neb. 769. In *First National Bank of Lisbon v. Bank of Wyndmere*, 15 N. D. 299, the old doctrine is specifically disapproved, the court holding that:

"The drawee of a forged check who has paid the same without detecting the forgery, may, upon discovery of the forgery, recover the money paid from the party who received the money, even though the latter was a good faith holder, provided the latter has not been misled or prejudiced by the drawee's failure to detect the forgery."

—and that:

"The burden of showing that he has been misled or prejudiced by the drawee's mistake in such a case rests upon him who claims the right to retain the money for that reason."

*Jones v. Miners' and Merchants' Bank*, 144 Mo. App. 428, is also published in 71 Central Law Journal, 137, where, in a note,

the editor of that publication, among other cases, calls attention to *First National Bank. v. Bank of Wyndmere, supra.* Speaking of that case, the editor continues:

" The rule this last case opposes certainly seems unsound. It has its basis solely upon a mistake of fact—arising possibly out of mere lapse of attention, while the taking of forged paper is through deliberate act. To say slips of attention may not be cured when they cause no substantial change in the situation certainly has no basis in justice, and any commercial rules whose efficiency necessitate disregard of justice ought to be amended."

We agree with the learned editor, and, as this is the first case wherein the question has arisen in this jurisdiction, we commit this court to the doctrine that a payee receiving money from a bank upon a check purporting to be drawn upon it by one of its depositors, but the signature of which was in fact forged, is not entitled to retain the same, except upon the following combination of facts: First, that the payee was not negligent in receiving the check; second, that the payor was lacking in due care in paying the same; and third, that upon the payor's action the payee has changed his position or would be in a worse condition if the mistake was corrected than if the payor had refused to pay the check at the time of its presentment.

As the court below submitted the case at bar to the jury upon instructions which substantially conform to this view of the law, its judgment is affirmed.

All the Justices concur.