## CHEROKEE NAT. BANK v. UNION TRUST CO.

No. 1914. Opinion Filed July 23, 1912.

(125 Pac. 464.)

1. **BANKS AND BANKING**—Forged Check—Payment—Rights of **Bona Fide Holders.** Where a bank, in good faith and for value, purchases from an indorser a check upon another bank, and thereupon indorses and forwards the same to its collection agency for collection, and the same is presented by the collection agent to the drawee bank, and is paid by the drawee bank, the drawee bank, upon thereafter discovering the check to be a forgery, cannot, by reason of the negotiable instruments law (sections 4496 and 4622, Comp. Laws 1909), recover the money back from the bank to whom it was paid.

2. **SAME.** A drawee, who pays to a bona fide holder a check to which the drawer's name has been forged, cannot recover the amount of such payment.

3.  **GUARANTY**—Construction of Contract—Indorsement of **Check.**
    The guaranty of an indorsement on a check applies only to the indorser, and does not protect the drawee against the risk of cashing a check to which the maker's name is forged.

(Syllabus by the Court.)

*Error from Craig County Court;*
*N. J. Gubser, Judge.*

Action by the Cherokee National Bank against the Union Trust Company. Judgment for defendant, and plaintiff brings error. Affirmed.

*Seymour Riddle* and *Biddison & Campbell,* for plaintiff in error.

*Chas. J. Wrightsman* and *Chas. E. Bush,* for defendant in error.

HAYES, J. Plaintiff in error was plaintiff in the court below, and defendant in error was defendant. Both parties are domestic corporations, engaged in the banking business in Craig county and Tulsa county, respectively. This proceeding in error is prosecuted from an order of the trial court, sustaining a demurrer to plaintiff's petition and dismissing its cause of action, and the sole question presented in this court for determination is whether plaintiff's petition states a cause of action.

It alleges, in substance, that on the 3d day of January, 1910, one C. Caldwell, who was a customer and depositor of the bank of plaintiff, presented to defendant, Union Trust Company, a check for the sum of $325, payable to the order of Oliver Smith, drawn on the plaintiff bank. At the time the check was presented to defendant and paid by it, the same was indorsed by Oliver Smith, the payee therein, J. W. Sanders, and J. E. Temples, for whom defendant cashed the check. Immediately after purchasing the check, defendant forwarded it for collection through its collection agency, the National Bank of Commerce of Kansas City, Mo., with the following indorsement thereon in writing:

"Pay Nat'l Bank of Commerce. Previous indorsements guaranteed. Kansas City, Mo. OK123, Jan. 14, 1910. Union Trust Company, Tulsa, Oklahoma."

On the 15th day of the same month, the National Bank of Commerce received the check and forwarded it to its collection agent at Vinita. Its collection agent, upon receiving the check, presented the same to plaintiff and received payment thereon in full, which sum was duly remitted to and received by defendant in full payment of the check. Afterwards, on the 22d day of January, 1910, plaintiff discovered that the signature of the drawer upon said check was not the real signature of the pretended drawer, but was a forgery. Plaintiff immediately, upon said discovery, notified defendant bank that the check was a forgery, and demanded that defendant repay to plaintiff the money it had received on the check from plaintiff, which defendant refused to do. Plaintiff alleges that in paying the check it relied upon the indorsements of defendant as written upon said check, and relied upon and believed that all the indorsements upon the check, as they appeared thereon, were genuine and true indorsements. It thereupon prayed judgment in the amount of said check, being the sum of money paid thereon by plaintiff to defendant, and for costs.

The court, in *American Express Co. v. State National Bank,* 27 Okla. 824, 113 Pac. 711, 33 L. R. A. (N. S.) 188, held the circumstances under which a payee receiving money from a bank, purporting to be drawn upon it by one of its depositors, but the signature upon which was in fact forged, is entitled to retain the money to be as follows:

"First, that the payee was not negligent in receiving the check; second, that the payor was lacking in due care in paying the same; and, third, that upon the payor's action the payee has changed his position, or would be in a worse condition if the mistake was corrected than if the payor had refused to pay the check at the time of its presentment."

In that case the bank upon which the check was drawn paid the same upon its presentment to the bank by the payee, and thereafter discovered that the name of the purported drawer had been forged to the check. The check was signed in the manner that was customary for the drawer to sign its checks; but it was not shown that the payee, on account of the payment of the check when presented, had been put in a worse position than if pay-

ment had been refused. This court affirmed a judgment of the trial court, holding that the bank was entitled to recover. The transaction involved in that case arose long before the adoption of the uniform negotiable instruments law, enacted in this state on the 20th day of March, 1909 (Sess. Laws 1909, p. 387); and this court, in departing from the old doctrine that a bank is bound to know its depositors' signatures, and cannot recover money paid upon the forgery of the drawer's name, when the forgery is discovered, and in adopting the rule announced therein as the one supported by the sounder reason, although not supported by the weight of authority, stated in the opinion that:

"The old rule has not become a part of our common law by general usage or custom; nor has it been expressly or impliedly made part of our law by statute."

It will serve no useful purpose to review, in this opinion, the authorities supporting the respective rules, and the reasons thereof; for the question before us now is: Has a drawee, who, without knowledge on its part of the forgery, has paid a check, a right to recover money paid on a depositor's forged check, in the absence of any negligence or fraud on the part of the holder to whom the check was paid?

Section 62 of the act of the Legislature, approved March 20, 1909 (Comp. Laws 1909, sec. 4496), provides:

"The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance; and admits: 1. The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument, and, 2. The existence of the payee and his then capacity to indorse."

The uniform negotiable instruments law has been enacted in Missouri, and constitutes part of the statutes of that state. In *National Bank of Rolla v. First Nat. Bank of Salem*, 141 Mo. App. 719, 125 S. W. 513, the facts presented the question now under consideration, including the construction of the statute above quoted. In the opinion it was said:

"The adoption in this and other states of our negotiable instruments law was for the purpose of having in the statutory laws of the states a uniform law in regard to commercial paper. A confusion was known to exist on many of the everyday transactions concerning such paper, and it may be said that there was no

question upon which the courts were more in conflict than upon the question involved in this case. After a careful examination of the new law, we are inclined to believe that it was intended to adopt the law as declared in *Price v. Neal, supra* (referring to *Price v. Neal,* 3 Burr, 1354)."

See also, *Nat. Bank of Commerce v. Mechanics' American Nat. Bank,* 148 Mo. App. 1, 127 S. W. 429.

In *Title Guaranty & Trust Co. v. Haven,* 126 App. Div. 802, 111 N. Y. Supp. 305, the Supreme Court of that state, in its First Appellate Division, construing the same statute, said: .

"A bank which pays a check purporting to be drawn on it by one of its depositors guarantees the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument, and, where such signature is forged, cannot recover back the amount from the person to whom it was paid, although the position of the parties to such person has not changed in any respect."

This case was, on appeal, reversed by the Court of Appeals, and it was held that the foregoing statute did not apply in the case; but the construction of the statute was approved. *Title Guaranty & Trust Co. v. Haven,* 196 N. Y. 487, 89 N. E. 1082, 1085, 25 L. R. A. (N. S.) 1308, 17 Ann. Cas. 1131.

Referring to the negotiable instruments law, the Supreme Court of Oregon, in which state the law has also been enacted, in the recent case of *Lumberman's Nat. Bank of Portland v. Campbell,* 121 Pac. 427, said:

"The act from which these excerpts are taken was designed to harmonize the decisions of courts of last resort in respect to commercial paper, and to give to negotiable instruments a degree of certainty that would be universal in its application in the states enacting the law."

That the foregoing excerpt states the chief purpose of the negotiable instruments law is familiar knowledge to the courts and to the bar. Of course, it is fundamental that the court of no state in which the law is enacted is bound by the construction of the statute by the courts of other states; but courts, with full knowledge of the history of this legislation, and knowing that its chief purpose is as stated above, should, we think, upon all questions of construction, where the rule adopted by other states is

not plainly erroneous, be disposed to follow the construction given to the act by the courts of the states in which the act has heretofore been adopted and construed; and particularly should this be true where the statute involves a question upon which the authorities, independent of statute, are so greatly divided as they are upon the question presented in the case at bar, for by no other course may uniformity be obtained; and, if the statute, thus construed, works a hardship in any locality, it may be corrected by legislation.

Other cases construing this statute, in harmony with the foregoing decisions from New York and Missouri, are *First National Bank v. Bank of Cottage Grove,* 59 Ore. 388, 117 Pac. 293; *Farmers' & Merchants' Bank v. Bank of Rutherford,* 115 Tenn. 64, 88 S. W. 939, 112 Am. St. Rep. 817; *Times Square Automobile Co. v. Rutherford Nat. Bank* (N. J.) 73 Atl. 479.

Dean James Bar Ames, in an article in 14 Harvard Law Review, 442, commenting upon the effect of the different provisions of the negotiable instruments law, said of the section now under consideration:

"Since an acceptor, by section 62, engages to pay the bill 'according to the tenor of his acceptance,' he must pay to the innocent payee or subsequent holder the amount called for by the bill at the time he accepted, even though larger than the original amount ordered by the drawer. A bank certifying a raised check is in the same case, since section 87 assimilates a certification to an acceptance. If the acceptor or certifying bank must honor his acceptance or certification in such a case, *a fortiori* a drawee who pays a raised bill or check, without acceptance or certification, should not recover the money paid from an innocent holder. These results are at variance with numerous American decisions, but they are changes for the better, and, so far as adopted, bring the law of this country into harmony with the law of nearly, if not, indeed, all, of the European states."

Under the rule of these authorities, had plaintiff merely accepted the bill drawn upon it, it could not be heard thereafter to deny that the signature of the drawer was genuine, but it would have been held bound upon its promise to pay the check, and to pay it in accordance with the tenor thereof; so, by paying the check, plaintiff is bound to the same effect, for payment is more

than acceptance, in that it discharges the indebtedness represented by the check after it is accepted. *Bank v. Bank,* 109 Mo. App. 665, 83 S. W. 537; *First Nat. Bank v. Bank of Cottage Grove, supra.*

Nor can plaintiff recover by reason of the indorsement upon the check: "Pay National Bank of Commerce; previous indorsements guaranteed; Kansas City, Mo., Union Trust Company, Tulsa, Oklahoma"—for the guaranty applies only to the indorser, and does not protect the drawee against the risk of cashing the check to which the maker's name is forged. *National Bank of Rolla v. First Natl. Bank of Salem, supra.* Nor can defendant be held as an indorser upon the check, because by section 188 of the act of the Legislature approved March 20, 1909 (section 4622, Comp. Laws 1909), it is provided:

"Where the holder of a check procures it to be accepted or certified the drawer and all indorsers are discharged from liability thereon."

See authorities cited on first point in this opinion.

It follows from the foregoing views that the judgment of the trial court should be affirmed.

TURNER, C. J., and WILLIAMS and KANE. JJ., concur. DUNN. J., absent, and not participating.