FIRST NATIONAL BANK OF PUKWANA, Respondent, v.
BRULE NATIONAL BANK OF CHAMBERLAIN, Appellant.

### (168 N. W. 1054).

(File No. 3905.    Opinion filed September 3, 1918.)

1. **Banks and Banking—Payee's Endorsement "Paid" on Check,
Whether "Qualified" Endorsement—Statute—Former. Opinion
Modified.**

   Where payee bank, without paying it, endorsed its name on
a check, followed by the word "Paid," and passed the check on
to drawee bank, held, payee bank did not thereby warrant gen-
uineness of the check, under Laws 1913, Ch. 279, Sec. 65; since
such payee was not a "qualified" indorser within meaning of
said section; the check, moreover, not being payable to bearer.
Former opinion (38 S. D. 396), modified.

2. **Banks and Banking—Genuineness of Check, Warranty, Endorse-
ment, Delivery, as, Transfer of Title as Basis—Drawee, Wheth-
er "Holder," or Transferee—Statute—Check as Voucher.**

   The warranty of genuineness of an instrument, by delivery or
by qualified endorsement, under Laws 1913, Ch. 279, Sec. 65, is
based upon transfer of title, and therefore extends only to
"holders;" and a drawee of a bank check is not a transferee of
title; nor does last holder's endorsement transfer the check,
but merely converts what was a check into a voucher.

3. **Courts—Opinion, Words in, How Construed, re Facts.**

   The words of a court, in deciding a point, must be construed
in the light of the facts before it.

4. **Negotiable Instruments—Check, Genuineness, Payment by Holder
Without Acceptance or Certification, Endorsers, Drawer, as
Basis of Credit—Holder's Negligence, Due Care, Effect, re Es-
toppel—Rule.**

   The true rule recognizes that, in case of payment of a nego-
tiable instrument without prior acceptance or certification,
holder takes it on credit of prior endorsers, or of drawer, and
not on credit of drawee; that when holder uses due care in
taking a bill or check, and drawee thereafter pays same, he
may not recover from holder, when latter was without fault,
or when there has been some change of position calling for
equitable relief; while on the other hand, no absolute estoppel
arises against drawee in holder's favor, regardless of latter's
negligence.

5. **Negotiable Instruments—Genuineness—Drawee, Payment by, Re-
liable on Payee's Diligence as Warranty—Rule—Statute.**

   The drawee of a bill or check, in making payment, may rely
upon assumption that payee used due diligence concerning
genuineness of drawer's or maker's signature, especially where
payee negotiated to a holder, thus representing that he had so

fully satisfied himself as to identity and signature of maker that he was willing to warrant in those respects, to all subsequent holders (construing Laws 1913, Ch. 279, Secs. 65, 66, known as Uniform Act.)

**6.** **Banks and Banking—Check, Genuineness—Payee's Endorsement as "Paid", Without Payment—Identification of Drawer Stranger by Stranger, Whether Reasonable Business Prudence—Rights of Drawee Payor.**

Where payee bank took the check from a stranger, without other identification than that given by another stranger; its cashier witnessing such stranger's mark, thus vouching for signature of maker, then endorsed the check, followed by word "Paid," held, such payee did not use reasonable business prudence; that drawee bank, in paying the check, might rely upon those facts as thus presented by payee.

**7.** **Banks and Banking—Forged Check, Vouched by Payee's Identification—Payee's Defense of Non-payment Till After Drawee's Payment, Tenability—"Equity and Good Conscience."**

Where payee bank took a forged check from a stranger whose sole identification came from another stranger, held, that its defense against suit by drawee bank who had paid it, that defendant did not pay the money to maker until after drawee had paid the check, was untenable as a ground why, in "equity and good conscience," plaintiff should not recover.

Appeal from Circuit Court, Brule County.  Hon. Frank B. Smith, Judge.

On rehearing.  Former opinion affirmed.

For former opinion, see 38 S. D. 396, 161 N. W. 616.

*Brown & Brown,* for Appellant.

*Herbert E. Hitchcock,* for Respondent.

(1)   To point one of the opinion, Appellant cited:

First National Bank of Cottage Grove v. Bank of Cottage Grove, (Ore.) 117 Pac. 293; National Bank of Commerce v. Farmers & Merchants Bank, (Neb.) 128 N. W. 522; State Bank of Chicago v. First National Bank of Omaha, (Neb.) 127 N. W. 244; National Bank of Commerce v. First National Bank of Coweta, (Okla.) 152 Pac. 596, L. R. A. 1916 E. 537; State Bank v. Cumberland Savings & Trust Company, 168 (N. C.) 605, L. R. A. 1915 D. 1138; Cherokee National Bank v. Union Trust Company, (Okla.) 125 Pac. 464; State National Bank of Albuquerque v. Bank of Magdalena, 157 Pac. 498; Bergstrom v. Ritz-Carlton Restaurant & Hotel Company, 15 N. Y. 959, 171 App. Div. 776.

Respondent cited:

National Bank of Commerce vs. First National Bank of Coweta, 152 Pac. 596.

(7)  To point seven, Appellant cited:

State Bank v. Cumberland Savings & Trust Company, (N. C.) 85 Southeastern 5; L. R. A. 1915-D, page 1138; Cherokee National Bank v. Union Trust Company, (Okla.) 125 Pac. 464; Farmers & Merchants Bank v. Rutherford Bank, 115 Tenn. 64.

Respondent cited:

Farmers and Merchants Bank vs. Bank of Rutherford, (Tenn.) 112 A. S. R. 817; Danvers Bank vs. Salem Bank, 151 Mass. 280, 283, 24. 24 N. E. 44, 45, 21 Am. St. Rep. 450; Canadian Bank of Commerce vs. Bingham, 71 Pacific 43; National Bank of Commerce vs. Mechanics Bank, (Mo.) 127 S. W. 429.

WHITING, P. J.  This case is before us upon rehearing; our former opinion being found in First National Bank v. Brule National Bank, 38 S. D. 396, 161 N. W. 616.  Reference is made to such opinion for a statement of the material facts.  We would, however, call attention to the further facts not noted in such opinion: The defendant indorsed the check, "Brule National Bank— Paid—Sept. 9, 1913, Chamberlain, S. D."; while, as a matter of fact, it did not make payment to the drawer of said check until after plaintiff had paid the check.

[1, 2] This court was in error in its former opinion in holding that section 65, c. 279, Laws 1913, was controlling in this case. Such section could have no application, because defendant was not a "qualified" indorser, nor was the check payable to bearer.  The warranty, under section 65, is based upon the transfer of title, and can therefore extend only to "holders," and a drawee is not a transferee of title; the last holder's indorsement does not transfer the check, but converts what was a check into a voucher.

What are the questions in this case?  They are few and simple. (1) Does the Uniform Act (chapter 279, Laws 1913) declare the rule governing where a drawee has paid a forged bill or check?  (2) If the Uniform Act does not lay down the rule, then should we adopt either the absolute estoppel rule, which some courts claim was announced in Price v. Neal, 3 Burr. 1354, or the modified estoppel rule actually announced in Price v. Neal, or shall we repudiate entirely the idea of estoppel and adopt the rule an-

nounced in First Nat. Bk. v. Bk. of Wyndmere, 15 N. D. 299, 108 N. W. 546, 10 L. R. A. (N. S.) 49, 125 Am. St. Rep. 588.

There is no section of the Uniform Act that directly and expressly declares the effect of payment by the drawee of a forged bill or check; but there is a line of decisions (Nat. Bk. of Commerce v. Mechanics' Am. Nat. Bk., 148 Mo. App. 1, 127 S. W. 429; Cherokee Nat. Bk. v. Union Trust Co., 33 Okl. 342, 125 Pac. 464; First Nat. Bk. v. Bk. of Cottage Grove, 59 Or. 388, 117 Pac. 293; other cases in note L. R. A. 1915A, 78, 79; and Daniel on Neg. Inst. § 1657, at page 1868) holding that, inasmuch as payment is greater than acceptance or certification, the greater must be held to include the lesser, and that therefore sections 62 and 185 of our Uniform Act are applicable, and estop the drawee of a check, who has paid same, exactly and under the same circumstances as they would estop a drawee from disputing a check after he had certified same. These sections read:

"Sec. 185.  Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance."

"Sec. 62.  The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance and admits:

"1. The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and

"2. The existence of the payee and his then capacity to indorse."

That all the incidents pertaining to acceptance or certification also pertain to payment is not true.  This was recognized in Price v. Neal.  In that case the drawee, Price, was seeking to recover of Neal the amount he had paid Neil on two bills.  Neal became the holder of one bill after it had been accepted by Price, while the other bill was paid without prior acceptance.  Lord Mansfield very properly said:

"But the plaintiff's case is much stronger upon the other bill, which was not accepted.  It is not stated 'that that bill was accepted before it was negotiated; on the contrary, the consideration for it was paid by the defendant, before the plaintiff had seen it.  So that the defendant took it upon the credit of the indorsers, not upon the credit of the plaintiff."

So in the case at bar the defendant by indorsing the check "Paid," represented to plaintiff that it had paid the check relying upon the credit it gave to the drawer of the check; while, if it had indorsed the check as for "collection," it would have advised the drawee that it was giving no credit to the drawer, but relying solely upon the drawee's acceptance. Payment, as a basis for estoppel, is not greater than acceptance or certification, and the decision in the above cases are based on a false promise.

[3] A careful reading of the opinion in Price v. Neal clearly discloses that it gives no support whatever to any rule of absolute estoppel flowing from *payment* of a forged bill or check by a drawee. The words of a court must be construed in the light of the facts before it. There was no claim that Neal had been negligent. If the facts had shown him negligent, and then the court had refused recovery of the money that had been paid him on the unaccepted draft, we would have in that case support for the absolute estoppel rule. That case simply decided that Neal "acted innocently and bona fide," and that whatever "neglect there was, was on his (Price's) side," and that it was for that reason that Price could not recover.

[4, 5] What, then, should be the rule? The drawee asks to recover for money had and received. If his claim did not rest upon a transaction relating to a negotiable instrument plaintiff could recover as for money paid under mistake, unless defendant could show some equitable reason, such as changed condition since, and relying upon, payment by plaintiff. In the Wyndmere Case, the North Dakota court holds that this rule giving right to recover money paid under mistake should extend to negotiable paper, and it rejects in its entirety the theory of estoppel and puts a case of this kind on exactly the same basis as the ordinary case of payment under mistake. But the great weight of authority, and that based on the better reasoning, holds that the exigencies of business demand a different rule in relation to negotiable paper. What is that rule? Is it an absolute estoppel against the drawee in favor of a holder, no matter how negligent such holder has been? It surely is not. The correct rule recognizes the fact that, in case of payment without a prior acceptance or certification, the holder takes the paper upon the credit of the prior indorsers and the credit of the drawer, and not upon the credit of the drawee; that the drawee,

in making payment, has a right to rely upon the assumption that the payee used due diligence especially where such payee negotiated the bill or check to a holder, thus representing that it had so fully satisfied itself as to the identity and signature of the maker that it was willing to warrant as relates thereto to all subsequent holders (sections 65 and 66, Uniform Act). Such correct rule denies the drawee the right to recover when the holder was without fault or when there has been some change of position calling for equitable relief. When a holder of a bill of exchange uses all due care in the taking of bill or check and the drawee thereafter pays same, the transaction is absolutely closed—modern business could not be done on any other basis. While the correct rule promotes the fluidity of two recognized mediums of exchange, those mediums by which the great bulk of business is carried on, checks and drafts, upon the other hand it encourages and demands prudent business methods upon the part of those receiving such mediums of exchange. Pennington County Bk. v. First St. Bk. of Moorhead, 110 Minn. 263, 125 N. W. 119, 26 L. R. A. (N. S.) 849, 136 Am. St. Rep. 496; First Nat. Bk. v. State Bk., 22 Neb. 769, 36 N. W. 289, 3 Am. St. Rep. 294; Bk. of Williamson v. McDowell County Bk., 66 W. Va. 545, 66 S. E. 761, 36 L. R. A. (N. S.) 605; Germania Bk. v. Boutell, 60 Minn. 189, 62 N. W. 327, 27 L. R. A. 635, 51 Am. St. Rep. 519; Am. Exp. Co. v. State Nat. Bk., 27 Okl. 824, 113 Pac. 711, 33 L. R. A. (N. S.) 188; Farmers' Nat. Bk. v. Farmers, etc., 159 Ky. 141; 166 S. W. 986, L. R. A. 1915A, 77, and note.

[6] That the defendant bank did not use reasonable business prudence is clear. It took this check from a stranger without other identification than that given by another stranger; its cashier witnessed the mark of such stranger thus vouching for the identity and signature of the maker; and it indorsed the check as "Paid," thus further throwing plaintiff off guard. Defendant could not but have known, when negotiating such check and putting it into the channel through which it would finally be presented to plaintiff for payment, that plaintiff, if it paid such check, as defendant was asking it to do, would have to rely solely upon the apparent faith and credit that defendant had placed in the drawer. From the very circumstances of this case plaintiff had to act on the facts as presented to it by defendant, and upon such facts only.

[7] But appellant argues that it so changed its position, after payment by plaintiff, that in "equity and good conscience" plaintiff should not recover—it says it did not pay over any money to the forger until after plaintiff had paid the check. There would be merit in such contention if defendant had indorsed the check for "collection," thus advising plaintiff that it was relying on plaintiff and not on the drawer. It stands in court where it would have been if it had done as it represented.

For the reasons above stated, the result reached in our former opinion is affirmed.

SMITH and McCOY, JJ., concur in results.