BANK OF PULASKI, Appellant, v. BLOOMFIELD STATE BANK, Appellee.

No. 38959.

JUNE 24, 1929.

OPINION ON REHEARING SEPTEMBER 22, 1930.

*H. C. & H. C. Taylor,* for appellant.

*Buell McCash,* for appellee.

EVANS, J.—The check under consideration was in the following form:

"Pulaski, Iowa, 1-21-1926                    No.
          The Bank of Pulaski
Pay to the order
     of          Hazen *Spears* [Writer's italics]          $173.25
One Hundred Seventy-three & 25-100                    Dollars
For Three stears
     Ross                              H. H. Tucker."

The circumstances attending the cashing of the check in question were testified to by the assistant cashier of the defendant as follows:

"A man came into the bank with Exhibit P–1 and presented it. There was nothing suspicious about him at all. He was dressed like an ordinary farmer. I asked him if his name was Hazen Spears, and he said it was. I, knowing Mr. Tucker and Mr. Spear, by reputation, cashed the check, and gave him the money. He signed the name on the reverse side in my presence, and at the time I believed that the signature was the genuine signature of H. H. Tucker, and that that man was Hazen Spears. I paid him $173.25, and received Exhibit P–1, this check. There was nothing about the conduct, appearance, manner, or looks of the man to arouse my suspicions about the genuineness of the check, or to lead me for one moment to doubt the genuineness of that check, nor the fact that the man who presented it was in fact Hazen Spears. I acted in good faith, because I thought he was who he purported to be. I thought he was Hazen Spears. The man who presented this check was dressed like an ordinary average farmer, and had on an overcoat,—a very good-appearing fellow."

The check was indorsed by the defendant to the Iowa Loan & Trust Company of Des Moines, and indorsed by the Iowa Loan & Trust Company of Des Moines to the Federal Reserve Bank of Chicago, and indorsed by the Federal Reserve Bank of Chicago to the Iowa National Bank of Des Moines, and by the Iowa National Bank of Des Moines it was presented to the plaintiff, and was by the plaintiff paid, on January 28, 1926. In early July, the check was delivered to Tucker, who in August repudiated the same, and declared it a forgery. On March 14, 1927, the plaintiff made demand upon the defendant for the

amount of the check, and followed the same by the present action.

The case has been very thoroughly argued. In a sense it has been excessively argued. Each side has filed six successive briefs, on successive dates. The result has been that the later arguments present a departure from the earlier ones. The successive arguments have discovered and presented new grounds of recovery and additional hypotheses. The case is one which lends itself quite readily to hypothetical discussion. By assuming slight variations of fact, the case may be extended to cover the whole field of the Negotiable Instrument Law, and substantially this is what has been done by the many briefs filed by counsel in their pardonable zeal. It becomes important, therefore, for us at the outset to set the case within the actual limits of the record, and to confine it within its own inclosure, for the purpose of our discussion.

The petition pleaded the facts which we have already stated. Its Paragraph 6 stated the grounds laid for recovery, as follows:

"6. That the said Bank of Pulaski would not have paid said check but for the fact that the same was indorsed by the Bloomfield State Bank, as hereinbefore referred to, and that said indorsement of said State Bank guaranteed all prior indorsements, and the said Bank of Pulaski relied upon said indorsement, and would not have paid said check but for the fact that the same was indorsed as aforesaid. That said Bloomfield State Bank was negligent and careless in paying said check to a person whom it did not know, and who had not been identified in any way, and that by this said plaintiff has suffered a loss of said above-named sum, and that there is due at this time from said State Bank in favor of said plaintiff bank the sum of $173.25, with interest as provided by law from the date of said demand."

It will be noted from the foregoing that recovery is predicated upon two grounds: (1) The negligence of the defendant in paying the check without any identification of the purported payee and indorser; and (2) that the defendant by its indorsement guaranteed the prior indorsement. Our discussion must be confined to these two predicates.

I. On the question of negligence, legal discussion has taken a wide range in the briefs. Beginning with *Price v. Neal*, 3 Burr. (Eng.) 1355, all the cases have been marshaled, as bear-ing upon the various hypotheses upon which recovery may be had by a drawee-bank which has mistakenly paid a forged check against its depositor. The appellant's contention is that the negligence of the first cashing bank is a proper ground of such recovery. This contention was accepted by the trial court, and taken for granted. We have, therefore, no occasion to consider it as a question of law. If there was error in the attitude of the court in that respect, it was not an error adverse to the appellant. Evidence of the circumstances attending the cashing of the check was introduced, and we have set forth above the substance thereof. Evidence was likewise introduced of the circumstances under which the check was paid by the drawee-bank. That evidence disclosed that Tucker had been a depositor of the drawee-bank for more than 20 years, and that its officials were familiar with his signature; that the official who accepted and paid the check in question observed the purported signature on the check at the time of such payment; that he observed that the signature on the check was not the genuine signature of Tucker; that he believed, how-ever, that the signature was authorized by Tucker. He testified that he knew that Ross, the son of the depositor, was authorized to sign his name, and that he believed the signature had been written by Ross. The fact here disclosed clearly put the official upon active inquiry. Having observed that the purported sig-nature was not in fact genuine, he was not deceived by the forgery. He was not misled into believing that the signature was genuine. The signature of the maker, such as it was, did not purport to be made by a third person for the maker. Know-ing that the signature was not genuine, the paying official de-liberately took a chance on the question of authority. Under all the circumstances surrounding him, was he negligent in so doing? Such was the question of fact presented to the trial court, upon the evidence.

The trial court held that the plaintiff's official was neg-ligent at this point, and that such negligence was the proximate cause of the loss. The court held also that the negligence of the

cashing bank was not established by the circumstances put in evidence. Under the evidence, a jury question was presented. The finding of fact by the trial court had support in the evidence, and it is now binding on us on this appeal. No error is, therefore, available to the appellant at this point. We pass to the second predicate.

II. The plaintiff pleaded, and now contends, that the purported indorsement of Hazen Spears was a forgery; that the defendant guaranteed such prior indorsement; and that it is liable to the plaintiff, as such guarantor.  Whether, if the premise were proved, the conclusion would follow, we need not here consider. See *McCornack v. Central State Bank*, 203 Iowa 833. It is sufficient at this point to say that the premise was not proved. That is to say, there was no proof that the purported indorsement was a forgery. It did appear that one Hazen Speer lived in Davis County, and that he had nothing to do with the transaction in question. But the indorser purported to be Hazen Spears. Such was the name of the purported payee. There was no proof that "Hazen Spears" was not the true name of the party who negotiated the instrument to the defendant. We have no occasion, therefore, to give further consideration to this proposition of plaintiff's.

By the court's finding of fact in an action at law, the plaintiff has failed to establish either of the two predicates upon which it asserts its right of recovery.

The judgment below is, accordingly,—*Affirmed*.

MORLING, C. J., and STEVENS, FAVILLE, ALBERT, KINDIG, WAGNER, and GRIMM, JJ., concur.

DE GRAFF, J. (concurring specially).—I agree that the judgment entered in this cause should be affirmed, but I prefer to base the affirmance on other and different grounds. It was incumbent upon the drawee-bank (plaintiff) to prove that the indorsement of Hazen Spears was a forgery. There is no record evidence that the man who presented the check to the defendant Bloomfield Bank for cashing was not "Hazen Spears." The proof shows that the presenter purporting to be "Hazen Spears" said to the cashier of the cashing bank that his name was Hazen Spears. There is no evidence that the man did not tell the truth.

The fact that a man by the name of Hazen Speer lived in the community is not proof that the man who presented the check for cashing was not Hazen Spears. It was conceded by both parties that the signature "Hazen Spears" appearing on the reverse side of said check is not the genuine signature of Hazen Speer, nor made by the authority nor within the knowledge of Hazen Speer. There is no record evidence that would permit the inference that these two names represented one and the same person, and under these circumstances, the doctrine of *idem sonans* is not applicable. There is no occasion to make any pronouncement whether a right of recovery would exist if the facts upon which appellant's proposition is grounded were established by competent proof. It is sufficient to state that there was no proof that Hazen Spears's signature was a forgery. The original decision in this case, as reported in 226 N. W. 119, which gives rise to the instant petition for rehearing, was based on a hypothesis not sustained by the record, in this: that it was assumed that the indorsement of the payee, Hazen Spears, was a forgery.

A second proposition relied upon by the plaintiff-appellant is that the indorsement by the cashing bank, "Prior indorsements guaranteed," constituted a contract between the plaintiff bank and the defendant bank, amounting to a warranty that the indorsement of Hazen Spears was genuine. It is sufficient to state that an indorsement on a check is for the benefit of subsequent holders, and not for the drawee. Every indorser who indorses without qualification warrants to all *subsequent holders in due course* the matter specified in Section 9526, Code, 1927, and in the preceding Section 9525. It is quite obvious that a drawee-bank who has paid a check is not a subsequent holder in due course. When the check is paid, it becomes a dead instrument. There is no longer a "holder," as defined by Section 9652, Code, 1927. It is self-evident that a person could not be a holder in due course of an instrument unless he is a holder.

A third proposition, under the allegations in the petition, relied upon by plaintiff-appellant, is that the act of the defendant bank in cashing the check without requiring the presenter to be identified was an act of negligence which was the proximate cause of the payment by the drawee in the amount of the forged check, resulting in the prayed damage to plaintiff. There is

no merit, under the facts, in this proposition. There is no evidence that placed the cashing bank on suspicion at the time the check was presented at its counter for payment. It was done in the usual course of banking business. Full value was paid the presenter for the check. The cashing bank had no notice or knowledge of any infirmity in the instrument or defect in the title of the person negotiating it. The cashing bank did become a holder, and it became a holder in due course. We are not dealing with a liability on the part of the cashing bank to an intermediate holder by reason of the forgery of the drawer's name. Here, the defendant cashing bank was a bona-fide non-negligent holder, and the rule is that, under such conditions, the doctrine of *Price v. Neal*, 3 Burr. (Eng.) 1355 (1 W. Bl. 390, 97 Eng. Reprint 871), finds application. It is the controlling proposition of law in the instant case. There is no doctrine of contributory negligence involved here, and, although the trial court reached the right conclusion, the judgment entered was not predicated on the right reasons. The doctrine of *Price v. Neal*, supra, is a rule of the Law Merchant, and, under the Uniform Negotiable Instruments Law, Section 196 (Section 9657, Code; 1927), the Law Merchant governs in any case not provided for in the Negotiable Instruments Statute. The doctrine of *Price v. Neal* has been stated and approved by this court. *First Nat. Bank v. Marshalltown State Bank* (1899), 107 Iowa 327 (44 L. R. A. 131). The latest pronouncement and approval of *Price v. Neal* are found in *Cherokee Nat. Bank v. Union Trust Co.* (1912), 33 Okla. 342 (125 Pac. 464), which case is quite analogous, on the facts, to the instant case. In brief, *Price v. Neal* has been adopted by all states in the American Union except Pennsylvania, whose legislature expressly abrogated the rule (Pennsylvania Statutes 1920, Section 16011 [Act of April 5, 1849, P. L. 426, Section 10]), and except North Dakota, which state by judicial interpretation has repudiated the doctrine. *First Nat. Bank v. Bank of Wyndmere* (1906), 15 N. D. 299 (108 N. W. 546, 10 L. R. A. [N. S.] 49, 125 Am. St. 588).

The plaintiff failed to establish any proposition relied upon for a reversal, and, under the record, the rule of *Price v. Neal*, supra, is determinative of this cause.