**FIRST NAT. BANK OF QUITMAN v. WOOD COUNTY et al.    (No. 3368.)**

Court of Civil Appeals of Texas. Texarkana. April 13, 1927.

Rehearing Denied April 28, 1927.

1. **Banks and banking** ⚖149(1)—**County may recover against depository paying forged checks, in absence of negligence of treasurer in failing to discover or report forgeries.**

Where county treasurer was not negligent in failing to discover forgeries of checks drawn on depository bank earlier than he did or reporting discovery to depository, county is entitled to recover against bank therefor.

2. **Banks and banking** ⚖148(1)—**Drawee bank cannot charge amount of forged check against depositor, unless rightfully responsible because of negligence or acquiescence (Negotiable Instruments Act, § 23).**

Generally, unless drawer of check whose name is forged, by negligence or acquiescence, is rightfully responsible, drawee bank cannot charge amount paid thereon against him, in view of Negotiable Instruments Act, § 23 (Rev. St. 1925, art. 5932).

3. **Banks and banking** ⚖149—**Banks paying checks forged on county treasurer without due care held liable over to drawee bank paying money thereon without active fault or negligence (Negotiable Instruments Act, §§ 62, 187, 196).**

Banks, paying checks forged on county treasurer without due care in identifying persons to whom they were paid, *held* liable over to drawee bank paying checks without active fault or negligence at time in not discovering forgery, since, in view of Negotiable Instruments Act § 196 (Rev. St. 1925, art. 5948), providing that law merchant shall govern in cases not provided for in act, sections 62 and 187 (arts. 5936, 5947) do not absolutely preclude acceptor from denying existence of drawer and genuineness of signature in cases of forgery.

4. **Banks and banking** ⚖140(3)—**Bills and notes** ⚖70—**Payment of forged instrument is not "acceptance," as presentment for payment and acceptance are different acts (Negotiable Instruments Act).**

Under Negotiable Instruments Act (Rev. St. 1925, arts. 5932–5948), presentment for payment and presentment for acceptance are different acts, and mere payment of a forged instrument is not an acceptance within purview of the act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Acceptance.]

5. **Banks and banking** ⚖149—**Drawee cannot recover over from holder of forged check not contributing to fraud nor guilty of negligence.**

Drawee cannot recover from a holder of a forged check who in no way contributed to fraud and is not guilty of negligence in the matter.

Appeal from District Court, Wood County; J. R. Warren, Judge.

Suit by Wood County against the First National Bank of Quitman, wherein defendant by cross-action impleaded Don Roberts, County Treasurer, and others. Judgment for plaintiff against defendant and denying recovery in cross-action, and defendant appeals. Modified, and, as modified, affirmed.

Wood county, by authority and direction of the commissioners' court, brought the suit against the First National Bank of Quitman to recover a judgment for $790.54 deposited with it and payment refused after demand. The First National Bank of Quitman was the duly appointed depository for the funds of Wood county, and had received on deposit the various funds of the county in sums largely in excess of $790.54. The suit involves forged checks paid by the bank and charged up against the account of the county treasurer. The First National Bank of Quitman pleaded a general denial to the claim of the county, and by a cross-action impleaded Don Roberts,

---

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the county treasurer, the First National Bank of Mineola, the First State Bank of Alba, the Alba National Bank, the First National Bank of Winnsboro, and the Merchants' & Planters' State Bank of Winnsboro, to recover against them proportionally the aggregate sum of $790.54. The cross-action, as against the banks, is to recover back the money paid to their use as holders of the forged checks, upon the ground, in effect, that they negligently caused the drawee bank to take and make payment of the forged checks as genuine. The banks pleaded, in effect, that they were innocent holders in good faith of the checks for value, and were entitled to retain the money paid to them by the drawee bank. The action against the treasurer was based upon negligence in failing to give timely notice of certain of the forgeries after receiving the bank's statement. There was a nonjury trial, resulting in a judgment against the First National Bank of Quitman in favor of Wood county, and in denial of recovery in the cross-action of the bank.

Don Roberts qualified as county treasurer of Wood county on January 12, 1925. Then and prior thereto the county funds of Wood county were on deposit in the First National Bank of Quitman, the regular county depository. Shortly before January 12, 1925, the county commissioners' court had allowed claims against the county in favor of ten persons, in amounts ranging from $25 to $152, aggregating $790.54. Don Roberts, the county treasurer, drew a check on the First National Bank of Quitman in favor of each of the persons having such claims, for the amount thereof, and delivered them; and such persons presented the checks and received the money thereon. All of the checks were not issued on the same date. Three of them were issued on January 12, 1925; four were issued on February 9, 1925; one was issued on February 14, 1925; one was issued on March 9, 1925; and one was issued on March 10, 1925. Subsequently, as appears, ten checks were issued duplicating the above-mentioned ten checks in all respects, as to dates, persons, and amounts. Such checks were drawn on the "First National Bank of Quitman" and signed by "Don Roberts, County Treasurer." These latter ten checks were forgeries in entirety, committed by a third party whose name is given in the record. And such person presented these forged checks to and had them cashed by the several banks, parties defendant. The purported names of the payees in indorsement were forgeries. All of the notes are set out in the evidence. It is sufficient to set out of the following, which is a copy of one of them:

"Quitman, Texas. 3–10, 1925.     No. 6356.

"The First National Bank of Quitman.

88—1249

"Pay to the order of Mineola Machine Shop $145.15 one hundred forty-five 15/100 dollars.

"Don Roberts, County Treasurer.

"Charge to bond for ————."

Indorsed on back: "Mineola Machine Shop, Grover Smith."

Stamped on back: "Pay to the order of any bank, banker, or trust company. All prior indorsements guaranteed. Mar. 26, 1925. Merchants' & Planters' State Bank. 88—486. Winnsboro, Texas, 88—486, O. W. Craddock, Cashier."

Perforated: "Paid 3–30–25."

The court made findings of fact substantially as follows: That the First National Bank of Mineola, in due course of business, acquired two of the notes and forwarded them to the First National Bank of Quitman for collection, and was by said bank paid on February 17, 1925. The Alba National Bank in due course of business acquired one of the notes and forwarded it for collection, and same was paid by the First National Bank of Quitman on February 20, 1925. The First State Bank of Alba, Tex., acquired one of the notes in due course of business and forwarded it for collection to the First National Bank of Quitman, Tex., and was paid by said last-named bank on February 20, 1925. The Merchants' & Planters' State Bank of Winnsboro acquired three of the notes in due course of business and timely forwarded them for collection to the First National Bank of Quitman, and was timely paid by said bank on, respectively, March 3, March 12, and March 30, 1925. The First National Bank of Winnsboro acquired three of the notes in due course of business and timely forwarded them for collection to the First National Bank of Quitman, and was by it timely paid on, respectively, March 12, March 13, and April 20, 1925. The court made the further finding:

"(17) I find that the forgeries in each instance were very clever and artistic and hard to detect, either by an experienced banker or the drawer of the check, and that the receiving banks in each instance acquired said checks on the faith of the signature of the county treasurer, without investigation as to the party who presented the same; that each of the receiving banks cashed the checks so received by them at the time said checks were received by paying to the party or parties who presented same the amounts thereof, respectively, without knowing or identifying the persons to whom the same were paid. I find that the First National Bank of Quitman paid each of said forged checks in good faith, believing the same to be genuine, and was not negligent in so doing.

"It was customary, and the usual mode of transacting business which was followed during these transactions, for the county depository to pay checks drawn by the county treasurer, and at the end of each month said bank would make a report to the county treasurer, which consisted of a statement of the checks it had paid the previous month, giving a list of the checks, with the checks attached to the statement, and it was the custom of the county treasurer to check over said statement and ascertain the correctness thereof; that quarterly the county treasurer would make a quarterly statement to the commissioners' court, embracing in his report

the names and amounts and for what purpose the checks were given; that the first report he made was on the 1st of February, 1925, and the second report was made on the 1st of May, 1925; that in making up his report the 1st of May, 1925, he for the first time discovered the forgery of the checks in question, none of which, however, were embraced in his February report, and, on discovery of the forgeries, he notified each of the banks in question. I do not find the county treasurer was negligent in failing to discover the forgeries earlier than he did or in reporting said discovery to the county depository.

"On each of said checks there is an indorsement purported to be the indorsement of the payee in the check, and also a rubber stamp indorsement by the bank receiving same 'Prior Indorsements Guaranteed,' and each of said checks had such indorsement thereon at the time the same was paid by the First National Bank of Quitman, Tex., and I find that no notice was given the receiving banks by the First National Bank of Quitman, Tex., of such forgeries until after May 1, 1925, and that no notice was given to the First National Bank of Quitman, Tex., by the county treasurer of the forgeries in either instance until about May 1, 1925.

"I find that the First National Bank of Quitman, Tex., upon the payment of said forged checks, charged same to the account of Wood county, taking same from the funds of Wood county on deposit with it, and has refused to reimburse said county for the amount so paid on said checks, and that each of the receiving banks, or banks which acquired said checks in the first instance, have refused to pay or reimburse the First National Bank of Quitman, Tex., the amount received by it, respectively, on the checks it acquired and which had been paid out by the First National Bank of Quitman, Tex."

The finding of No. 17 above is challenged in that part stating that the checks were paid "without investigation as to the party who presented same." The extent of the present record here is to the effect that the officers of the banks could not tell the county treasurer and county judge who they paid the money to. They did not know or recollect anything about the party to whom they paid the money, and could not describe the party, except in one instance. The cashier of the Merchants' & Planters' State Bank described a party as the one who cashed the Mineola Machine Shop check for $145, and this party afterwards pleaded guilty and was convicted therefor. The case, though, was tried by all the parties on the assumption of fact being true that such convicted party forged and cashed all ten checks.

The following conclusions of law were filed by the court:

"Upon the foregoing facts, and in view of the Negotiable Instrument Act, I conclude that the payment of each of the checks by the First National Bank of Quitman operated and became an acceptance of said checks, and the indorser banks thereby became discharged and did not become liable over to the drawee for the repayment thereof; that the defendant bank is not entitled to recover on its cross-action against either of the other banks, or against the defendant Don Roberts, but that the plaintiff is entitled to recover against the said defendant bank."

· V. B. Harris, of Quitman, for appellant.

W. G. Russell, of Mineola, R. B. Howell, W. D. Suiter, and H. L. Wilkinson, all of Winnsboro, Bozeman & Cathey, of Quitman, and Jones & Jones, of Mineola, for appellees.

LEVY, J. (after stating the facts as above). [1, 2] The questions in the case are, whether (1) the county of Wood is entitled to a judgment against the depository bank for the full amount of the forged checks; and, if so, (2) are the several banks to whom money was paid on such forged checks liable over to the depository bank. The trial court determined the first question in favor of Wood county, and we think correctly so. As a general rule the doctrine prevails that, unless the drawer of the check whose name be forged is, by negligence or acquiescence, rightfully responsible, the drawee bank cannot charge the amount paid in account against him. Neg. Inst. Act, § 23 (Rev. St. 1925, art. 5932); 8 C. J. p. 607; 2 Daniel on Neg. Inst. (Ed. 1903) § 1655; Morris v. Bank, 37 Tex. Civ. App. 97, 83 S. W. 36; Glasscock v. Bank, 114 Tex. 207, 266 S. W. 393, 36 A. L. R. 320; and numerous other cases. It is for the reason that a bank, in paying a check drawn by a depositor, is generally held to know the signature, and, if a forged check is paid, the bank will not be heard to assert, against the depositor, a mistake as to the signature, unless under the exception stated above. An estoppel, predicated on the exception first stated above, does not arise upon the facts of the present case against Wood county, acting through its treasurer. The finding of fact, having evidence to support it, was that there was not acquiescence or negligent failure in the matter on the part of the county treasurer. He was found not blameable in the circumstances "in failing to discover the forgeries earlier than he did or in reporting said discovery to the county depository." This same finding of fact would also operate, as correctly held by the court, to deny a recovery at all by the depository bank against the county treasurer on the cross-action of the bank.

[3-5] It is believed that the answer of the second question depends upon the legal effect attaching to the facts of the present case. The full fact was established, as found by the court, that the drawee bank was without actual fault or negligence in not knowing the signature and detecting the forgery of the checks before payment of the same to the several banks. The finding is warranted by the evidence. In the circumstances it reasonably appears that there was no active negligence on the part of the drawee bank in not detecting the forgery by a bare inspection of the checks without reference to anything outside of them. As further found by the court, each

one of the holder banks "cashed the checks so received by them at the time the checks were received by paying to the party or parties who presented same the amounts thereof, respectively, without knowing or identifying the persons to whom the same were paid, on the faith of the signature of the county treasurer, without investigation as to the party who presented the same." The case was tried by the parties on the fact being true that the convicted parties cashed all ten checks, which were forged by one of them. There is sufficient evidence supporting the court's conclusion to warrant the finding of negligence in the matter on the part of the several banks in taking and cashing the checks. People's Bank v. Franklin Bank, 88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884; First Nat'l Bank v. State Bank, 22 Neb. 769, 36 N. W. 289, 3 Am. St. Rep. 294. Such banks parted with their funds upon forged checks through error and fault, without due care upon their part. Therefore, under the facts, the several banks did not take the checks from the forger and cash them without fault or negligence at the time, and the drawee bank paid them the money without active fault or negligence at the time in not discovering the forgery. Under the existing rule in this state, the drawee bank would be entitled upon such facts to recover the money paid on the forged checks over against the other banks. Rouvant v. San Antonio Nat. Bank, 63 Tex. 610; Iron City Nat. Bank of Llano v. Peyton, 15 Tex. Civ. App. 184, 39 S. W. 223; Texas State Bank of Walnut Springs v. First Nat. Bank of Meridian (Tex. Civ. App.) 168 S. W. 504. See 10 L. R. A. (N. S.) page 50, note; 12 A. L. R. page 1099, note; 94 Am. St. Rep. page 642, note. But it is urged by the several banks, and the court seemingly so determined, that such rule was modified and made inapplicable by sections 62 and 187 of the Negotiable Instrument Act (Rev. St. 1925, arts. 5936, 5947). As insisted, when the drawee bank paid the checks, said bank was absolutely estopped under the provisions of such sections of the act, the same as would be any other drawee, from disputing such checks after certifying same. In other words, it is contended the payment was equivalent to an acceptance, and therefore the acceptor is absolutely precluded, as is the effect of the sections mentioned, from denying the existence of the drawer and the genuineness of his signature. It is believed that the provisions of the act cannot be given the effect contended for, in cases of forgery where the holders, as we conclude in point of fact in the present case, are not holders entirely "without negligence" in taking the checks from the forger and cashing them. The act does not directly and expressly declare such effect of absolute estoppel of mere payment by the drawee of a forged check. And the rule laid down in the cases above mentioned was not intended to be modified, in view of section 196 of the act (Rev. St. 1925, art. 5948) providing: "In any case not provided for in this act the rules of law and equity including the law merchant shall govern." As held, presentment for payment and presentment for acceptance are different acts under the Negotiable Instruments Act. First National Bank of Goree v. Tally, 115 Tex. 591, 285 S. W. 612. Also, mere payment of a forged instrument is not an acceptance within the purview of the act. Trucking Co. v. Bank (Tex. Civ. App.) 240 S. W. 1000. And the extent of the ruling in the cases dealing with the act in respect to the question here sustains the long-established view only that a drawee cannot recover over from a holder of a forged check "who has in no way contributed to the fraud, and is not guilty of negligence in the matter" (Bank v. Bank, 59 Or. 388, 117 P. 293; Bank v. Union Trust Co., 32 Okl. 342, 125 P. 464; Title Guarantee & Trust Co. v. Haven, 196 N. Y. 487, 89 N. E. 1082, 1085, 25 L. R. A. [N. S.] 1308, 17 Ann. Cas. 1131; Bank v. Bank, 110 Minn. 263, 125 N. W. 119, 26 L. R. A. [N. S.] 849, 136 Am. St. Rep. 496; Bank v. Bank, 48 Mo. App. 1, 127 S. W. 429; and other cases), nor where the fault is entirely on the drawee bank (Bank v. Bank, 141 Mo. App. 719, 125 S. W. 513).

The cited case of Bull v. Novice State Bank (Tex. Civ. App.) 250 S. W. 232, does not present or involve the same question as here. In the special circumstances of that case there was merely presumed acceptance of the drawee under section 137 of the act (Rev. St. 1925, art. 5941).

The judgment is accordingly modified so as to allow the drawee bank to recover over against each of the receiving banks the amounts paid respectively, and as so modified the judgment will be affirmed. The appellee banks will proportionally pay one-half of the costs of appeal and all the costs of the trial court incurred by each of them respectively; the appellant to pay all costs of the trial court except as taxed against appellee banks, and one-half of the costs of appeal.