## LABOR BANK & TRUST CO. v. ADAMS et al. (No. 885.)

Court of Civil Appeals of Texas. Waco. Jan. 9, 1930.

King, Wood & Morrow, of Houston, for plaintiff in error.

Neff, Hale & Neff and Trippett, Richey & Sheehy, all of Waco, for defendants in error.

BARCUS, J. Defendant in error Lynn Adams, hereinafter designated as Adams, filed this suit against defendant in error Citizens' National Bank of Waco, hereinafter designated Citizens' Bank, and against plaintiff in error Labor Bank & Trust Company of Houston, hereinafter designated Labor Bank. to recover $550.44. The Citizens' Bank filed a cross-action against the Labor Bank, asking for judgment over against said bank for any amount that Adams might recover against it. The Labor Bank as well as the Citizens' Bank were each banking corporations. The Labor Bank filed its pleas of privilege to the cause of action as alleged by Adams and as to the cross-action alleged against it by the Citizens' Bank. The pleas of privilege, as well as the cause on its merits, were tried at the same term of court. The trial court overruled both of the pleas of privilege and rendered judgment in favor of Adams against the two banks, jointly and severally, and in favor of the Citizens' Bank against the Labor Bank on its cross-action for the amount that the Citizens' Bank was required to pay. The Labor Bank alone presents this appeal.

The material facts are undisputed. It appears that Adams is the state distributor for Quaker State Motor oil, with separate offices in Waco, Austin, and Houston. He personally has his residence in Waco. His brother, J. D. Adams, was in charge of the Houston office. On August 9, 1928, Adams drew a check against the Citizens' Bank of Waco for $550.-44, payable to his brother, J. D. Adams, which, together with a letter, was sent via mail to J. D. Adams at Houston. In some way not revealed by the record, the check was intercepted and was presented to the Labor Bank at Houston for payment and indorsed by a person who claimed to be J. D. Adams, but who admittedly was not the J. D. Adams named as payee in the check. The Labor Bank, without indorsing said check, sent same direct to the Citizens' Bank for payment, and same was promptly paid by the Citizens' Bank and charged against the account of Lynn Adams, and the Labor Bank in turn paid to the party who cashed same a part of said money. The check was paid by the Citizens' Bank on August 13, 1928, four days after it was issued. A few days thereafter Adams learned through a telephone conversation with his brother in Houston that the check had not been received by him, and he immediately took the matter up with the

Citizens' Bank and learned that the check had been paid. The Labor Bank was immediately communicated with and told that J. D. Adams' name had been forged. At said time the Labor Bank refused to reveal the amount of money in its possession that it had received from the Citizens' Bank on said forged indorsement. Adams then sent to his brother, J. D. Adams, another check for the same amount. Said money originally was intended to be and was finally used by J. D. Adams to pay the expenses incident to running the office of his brother, Lynn Adams, in Houston. Lynn Adams then filed this suit to recover the amount that the Citizens' Bank had paid to the Labor Bank on said check that had been paid on the forged indorsement of the payee, J. D. Adams.

The trial court filed findings of fact and conclusions of law.

■■ The Labor Bank, by several propositions, contends that the trial court committed error in overruling his pleas of privilege, both as to Adams' alleged cause of action and as to the Citizens' Bank's alleged cause of action, claiming that Adams had no cause of action against it, and that the Citizens' Bank could not by cross-action hold it in the suit which Adams had brought against the Citizens' Bank in McLennan county. Under section 23, art. 5932, of the Revised Statutes, known as the Negotiable Instruments Act, it is provided, in effect, that a party who obtains possession of a check through a forged indorsement obtains no rights thereunder, and that said forged indorsement is wholly inoperative. The overwhelming weight of authority is that, where a collecting bank pays money on a forged indorsement and the check is thereafter forwarded to the bank against which same is drawn and same is paid, that the collecting bank holds said funds for and on behalf of the owner of the check, and that its payment of the funds to the party who committed the forgery, or to any other person, does not discharge its obligation, and that the owner of the check has a right to bring a suit direct against the collecting bank that has collected the funds on the forged indorsement, whether it has paid same out or not, and recover the amount thereof. Brannon's Negotiable Instruments Law (4th Ed.) p. 193; Merchants' Bank v. National Capitol Press, 53 App. D. C. 59, 288 F. 265, 31 A. L. R. 1066; United States Portland Cement Co. v. United States National Bank, 61 Colo. 334, 157 P. 202, L. R. A. 1917A, 145; Strong v. Missouri-Lincoln Trust Co. (Mo. App.) 263 S. W. 1038; Good Roads Machinery Co. v. Broadway Bank (Mo. App.) 267 S. W. 41; Hope Vacuum Cleaner Co. v. Commercial Nat. Bank, 101 Kan. 726, 168 P. 870. Our Supreme Court has specifically held that, where a bank has paid checks on a forged indorsement, it can recover from the bank or person from whom it received and paid said check the

amount of money paid out thereon. First Nat. Bank v. Wood County (Tex. Civ. App.) 294 S. W. 324; Id. (Tex. Com. App.) 299 S. W. 856. The law seems to be well settled that a bank on which a check is drawn is charged with the duty to determine whether the drawer's name is forged, but no such duty arises or is imposed upon said bank with reference to the indorsement of the payee, since the bank on which the check is drawn is not presumed to know the signature of the payee therein. American Exch. Nat. Bank v. Yorkville Bank, 122 Misc. Rep. 616, 204 N. Y. S. 621, and authorities there cited.

The general policy of our courts is to, as much as possible, avoid a multiplicity of suits, and they have held specifically that all proper parties can be joined in one suit, although they may live in different counties. First National Bank v. Neel (Tex. Civ. App.) 10 S.W.(2d) 408; National Surety Co. v. Atascosa Ice, Water & Light Co. (Tex. Com. App.) 273 S. W. 821; Alexander v. Alexander (Tex. Civ. App.) 265 S. W. 1072. In Alexander v. Alexander, supra, the court stated: "Every person having a direct and ascertainable interest in the subject matter of the litigation which may be effected by the court's action in the suit, is a proper party, and if it is desired to bind him by the judgment of the court, it is necessary of course that he be made a party for that purpose."

■■ Defendants in error contend that the court had jurisdiction of plaintiff in error under both subdivision 4 and subdivision 23 of article 1995 of the Revised Statutes; their contention being that the Labor Bank was at least a proper party if not a necessary party, and, further, that the cause of action against the Labor Bank arose at least in part in McLennan county, since the check in controversy was presented by the Labor Bank to the Citizens' Bank in McLennan county and the money was paid to the Labor Bank on said check in McLennan county. The courts have uniformly held that in a suit against a corporation, venue may be laid under subdivision 23 of Article 1995 in the county where any portion of the cause of action arose. Texas Portland Cement Co. v. Carsey (Tex. Civ. App.) 3 S.W.(2d) 930; Mercantile Bank & Trust Co. v. Schuhart, 115 Tex. 114, 277 S. W. 621; Texas Kalamazoo Silo Co. v. Alley (Tex. Civ. App.) 191 S. W. 774; San Jacinto Life Ins. Co. v. Boyd (Tex. Civ. App.) 214 S. W. 482. In order for Adams to have recovered against either of the banks, it was necessary for him to show that the indorsement on the check in controversy was a forgery. If same was a forgery, then the Citizens' Bank would unquestionably be liable for the amount thereof, and the Labor Bank, since it received the money on the forged indorsement, would be liable to the owner of said check for the amount thereof, and, if the Citizens' Bank was required to pay same, it was

entitled to judgment over against the Labor Bank for the amount it had paid said bank on said check. At least a part of the cause of action growing out of the cashing of said check with the forged indorsement occurred in McLennan county. We think the Citizens' Bank had a right to implead the Labor Bank, and that the interests of the respective parties were so interwoven that the entire litigation was properly triable in McLennan county. We overrule all of the Labor Bank's assignments dealing with the trial court's overruling the respective pleas of privilege.

By other assignments and propositions plaintiff in error complains of the action of the trial court in making certain findings of facts and conclusions of law. We have carefully examined these and do not think same show any reversible error.

Plaintiff in error Labor Bank complains of the form of the judgment of the trial court, its contention being that the effect thereof is to award a double recovery against it, in that it awards a judgment in favor of the Citizens' Bank against it and Adams jointly and severally for $550.44, and then in turn awards a judgment in favor of the Citizens' Bank against it for a like amount. We do not think the judgment of the trial court is subject to this criticism. In order, however, that there may be no question raised with reference thereto, the judgment of the trial court will be reformed to the extent that it shall provide that the payment of the judgment rendered in favor of Lynn Adams by the Labor Bank shall have the effect of canceling the judgment recovered by the Citizens' Bank against the Labor Bank. The costs are taxed against plaintiff in error.

As so reformed, the judgment of the trial court is affirmed.